1  **BARRERA & ASSOCIATES**
   **PATRICIO T.D. BARRERA (SBN 149696)**
2  **STEPHEN G. SVAJIAN (SBN 266581)**
   1500 Rosecrans Avenue, Suite 500
3  Manhattan Beach, California 90266
   Telephone: 310.802.1500
4  Telefax:    310.802.0500

5  Attorneys for Plaintiff
   DONE! Ventures, LLC
6

7

8

9                    **UNITED STATES DISTRICT COURT**

10                  **CENTRAL DISTRICT OF CALIFORNIA**

11                        **WESTERN DIVISION**

12

13  DONE! VENTURES, LLC, a Delaware      )   Case No. 2:10-cv-04420-SJO-JC
    Limited Liability Company,           )
14                                       )
                 Plaintiff,              )   **PLAINTIFF'S MEMORANDUM**
15                                       )   **OF POINTS AND**
              vs.                        )   **AUTHORITIES IN SUPPORT**
16                                       )   **OF EX PARTE APPLICATION**
    GENERAL ELECTRIC COMPANY, a          )   **FOR A TEMPORARY**
17  New York Corporation; NBC            )   **RESTRAINING ORDER AND**
    UNIVERSAL, INC., a Delaware          )   **ORDER TO SHOW CAUSE RE:**
18  Corporation; IVILLAGE, INC., a       )   **PRELIMINARY INJUNCTION**
    Delaware Corporation, and DOES 1     )
19  through 10, inclusive,               )
                                         )   [Removed from Los Angeles
20               Defendants.             )   County Superior Court Case No.
    _____ )   BC439011]
21

22

23

24

25

26

27

28

BARRERA & ASSOCIATES
1500 Rosecrans Avenue
Suite 500
Manhattan Beach, CA 90266

Memorandum of Points and Authorities
in Support of Ex Parte Application

# **TABLE OF CONTENTS**

1.   INTRODUCTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

2.   STATEMENT OF FACTS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

    A.   iVillage.com and Women.com Networks . . . . . . . . . . . . . . . . . . . . . 3

    B.   Sale of the Domain Names Women.com and
        Women.net to DONE! . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

    C.   Actions Taken by NBC after This Lawsuit Was Filed . . . . . . . . . . . 5

    D.   Background on Web Traffic Generated by Women.com . . . . . . . . . 6

3.   LEGAL ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

    A.   There Is No Adequate Legal Remedy for the
        Relief Sought Herein . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

    B.   DONE! Is Suffering Irreparable Harm . . . . . . . . . . . . . . . . . . . . . . . 8

        i.   DONE! Is Suffering Irreparable Harm from
            NBC Forwarding Traffic from Women.com and
            Women.net to iVillage.com . . . . . . . . . . . . . . . . . . . . . . . . . . 8

        ii.  DONE! Will Suffer Irreparable Harm if NBC Is
            Allowed to Again Change the DNS Settings for
            Women.com and Women.net . . . . . . . . . . . . . . . . . . . . . . . . 9

        iii. DONE! Will Suffer Irreparable Harm if NBC Is
            Allowed to Sell, Transfer, Market, Develop, or
            Encumber Women.com and Women.net in Any Way . . . . . . . 9

        iv.  The Threat of Irreparable Harm Is Imminent . . . . . . . . . . . . . 10

    C.   The Balance of Equities Tips Decidedly in DONE!'s Favor and
        Supports Awarding the Requested Injunctive Relief . . . . . . . . . . . . 10

        i.   DONE! will suffer greater Injury from denial of the injunction
            than defendants are likely to suffer if it is granted . . . . . . . . 11

        ii.  There Is a Reasonable Probability that DONE! Will
            Prevail on the Merits . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

BARRERA & ASSOCIATES
1500 Rosecrans Avenue
Suite 500
Manhattan Beach, CA 90266

Memorandum of Points and Authorities
in Support of Ex Parte Application          i

a.   There Was a Contract Between NBC and Done!,
which NBC Breached . . . . . . . . . . . . . . . . . . . . . . . . . . 11

b.   The Terms of the Contract Were Sufficiently
Definite and Certain or Capable of Being
Supplemented by Custom and Business Usage . . . . . . 12

iii.   Sedo was NBC's Agent and Had the Power to Enter
into a Contract on Behalf of NBC . . . . . . . . . . . . . . . . . . . 13

iv.   Conclusion: In Balancing the Equities, The Court Must
Find in Favor of DONE! . . . . . . . . . . . . . . . . . . . . . . . . . . 15

D.   Transferring the Domain Name and Enjoining NBC Universal
from Selling Women.com and Women.net Preserves the Status
Quo Pending a Trial on the Merits . . . . . . . . . . . . . . . . . . . . . . . 15

4.   NOTICE PURSUANT TO LOCAL RULE 7-19 . . . . . . . . . . . . . . . . . . 16

5.   CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

BARRERA & ASSOCIATES
1500 Rosecrans Avenue
Suite 500
Manhattan Beach, CA 90266

Memorandum of Points and Authorities
in Support of Ex Parte Application          ii

## TABLE OF AUTHORITIES

**FEDERAL CASES**

*Benda v. Grand Lodge of the International Association of Machinists,*
   584 F.2d 308, 315 (9th Cir.1978) ................................. 15, 16

*C.A.R. Transp. Brokerage Co., Inc. v. Darden Restaurants, Inc.,*
   213 F.3d 474, 479 (9th Cir. 2000) ............................... 20

*Cadence Design Systems, Inc., v. Avant! Corp.,*
   125 F.3d 824, 928 (9th Cir. 1997) ............................... 11

*Caribbean Marine Services Co., Inc. v. Baldrige,*
   844 F.2d 668 (9th Cir. 1988) .................................... 15

*CRS Recovery, Inc. v. Laxton,*
   600 F.3d 1138, 1144 (9th Cir. 2010) ............................. 6

*Kremen v. Cohen,*
   337 F.3d 1024 (9th Cir. 2003) ................................. 6, 13

*Larry P. v. Riles,*
   502 F.2d 963, 965 (9th Cir. 1974) ............................... 20

*Los Angeles Memorial Coliseum Comm'n. v. National Football League,*
   634 F.2d 1197, 1202 (9th Cir. 1980) ............................. 13

*Panavision Int'l, L.P.v. Toeppen,*
   945 F.Supp. 1296, 1302 (C.D. Cal. 1996) ........................ 12

*Regents of the University of California v. ABC, Inc.,*
   747 F.2d 511, 519 (9th Cir. 1984). .............................. 13

*Sierra On-Line, Inc. v. Phoenix Software, Inc.,*
   739 F.2d 1415 (1984) .......................................... 15

*Sony Computer Entertainment, Inc. v. Connectix Corp.,*
   203 F.3d 596, 602 (9th Cir. 2000) ............................... 11

*Tanner Motor Livery, Ltd. v. Avis, Inc.,*
   316 F.2d 804, 809 (9th Cir. 1963) ............................... 21

BARRERA & ASSOCIATES
1500 Rosecrans Avenue
Suite 500
Manhattan Beach, CA 90266

*Teletech Customer Care Mgmnt., Inc. v. Tele-Tech Co.,*
    977 F. Supp. 1407, 1411 - 1412 (C.D. Cal. 1997) . . . . . . . . . . . . . . . . . 12

*Weinberger v. Romero-Barcelo,*
    456 U.S. 305, 312, 102 S.Ct. 1798, 1803, 72 L.Ed.2d 91 (1982) . . . . . . . 12

*Westinghouse Elec. Corp. v. Free Sewing Mach. Co.,*
    7 Cir., 1958, 256 F.2d 806, 808 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

**STATE CASES**

*Blackburn v. Charnley,*
    117 Cal.App.4th 758, 766 (2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

*Blair v. Brownstone Oil & Refining Co.,*
    35 Cal.App., 394, 170 p. 160 (1917) . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

*Mueller v. Chandler,*
    217 Cal.App.2d 521, 523 (1963) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

*Myers v. Stephens,*
    233 Cal.App.2d 104, 112 (1965) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

*Wall Street Network, Ltd. v. New York Times, Co.,*
    164 Cal.App.4th 1171, 1178 (2008) . . . . . . . . . . . . . . . . . . . . . . . 16, 17

*Wallace v. Sinclair,*
    114 Cal.App.2d 220, 229-230, (1952) . . . . . . . . . . . . . . . . . . . . . . . . . 18

*Weddington Productions, Inc. v. Flick,*
    60 Cal.App. 4th 793, 811 (1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

**FEDERAL STATUTES**

Fed R. Civ. P 65(b) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

Fed. R. Civ. P. 65(b)(1)(A) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

**STATE STATUTES**

Cal. Civ. Code § 2315 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

Cal.Civ.Code § 2316 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

Cal.Civ.Code § 2317 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

BARRERA & ASSOCIATES
1500 Rosecrans Avenue
Suite 500
Manhattan Beach, CA 90266

Memorandum of Points and Authorities
in Support of Ex Parte Application    iv

## 1.    INTRODUCTION

The Ninth Circuit, in *CRS Recovery, Inc. v. Laxton*, 600 F.3d 1138, 1144 (9th Cir. 2010), recently held the following with respect to California's policy on property rights in domain names:

> California seeks to protect the intangible property rights of the owners of domain names, recognizing that control of a domain name 'provide[s] a sense of identity and an exclusive vehicle to market products and ideas.' . . . Many domain name registrants 'invest substantial time and money to develop and promote websites that depend on their domain names. Ensuring that they reap the benefits of their investments reduces uncertainty and thus encourages investment in the first place, promoting the growth of the Internet overall.' *Kremen v. Cohen*, 337 F.3d 1024, 1030 (9th Cir. 2003).

> California's policy in treating domain names as property is thus accurately characterized as protecting the rightful holders of domain names, encouraging investment in and development of that property.

Consistent with this well-articulated policy, plaintiff DONE! Ventures, LLC (DONE!) requests that this court immediately issue a temporary restraining order, pursuant to Fed R. Civ. P 65(b) ordering defendants General Electric Company, NBC Universal, Inc., and iVillage, Inc. (NBC) to transfer the domain names Women.com and Women.net to an escrow agent or a neutral third party, and/or enjoin defendants from transferring, selling, marketing, developing, or encumbering the names in any other way. A temporary restraining order is necessary to prevent irreparable harm to the unique properties which DONE! purchased from NBC and to prevent irreparable harm to DONE!'s competitive position vis-à-vis iVillage until a trial on the merits where plaintiff is likely to prove NBC breached its contract with DONE! and that DONE! is entitled to specific performance.

DONE! intends to compete with NBC's iVillage in creating a content-driven community for women on the web. To that end, DONE! entered into a valid contract with NBC on May 24, 2010, to purchase the domain names Women.com and Women.net. However, despite having previously accepted DONE!'s offer of

BARRERA & ASSOCIATES
1500 Rosecrans Avenue
Suite 500
Manhattan Beach, CA 90266

Memorandum of Points and Authorities
in Support of Ex Parte Application          1

$1,000,000 for the domain names, NBC inexplicably reneged on the deal and has refused to complete the transaction. As a result, DONE! brought suit in state court for breach of contract and specific performance.

After DONE! brought suit, NBC changed the Domain Name System ("DNS") settings for the domain names and created "dead links." These dead links damaged the property that DONE! acquired from defendants.

In response, DONE! filed an ex parte application for preliminary relief in state court, requesting (1) that the court transfer the domains to a third-party and (2) that the court enjoin defendants from encumbering the names in any way. The state court judge heard oral argument on the merits from both sides, and set the matter for a hearing on a preliminary injunction. The Court issued an Order, including a briefing schedule regarding request for injunctive relief. The Court set the hearing for July 9, 2010.

The next day, defendants removed the case to federal court and then immediately made matters worse - defendants changed the DNS settings for the sites Women.com and Women.net to point to http://www.iVillage.com, thus usurping the web traffic generated by the domain names and causing irreparable damage to DONE!'s ability to compete with iVillage in the future.

Defendants' actions regarding changes to the DNS settings are outrageous. Defendants are engaging in despicable business practices by essentially stealing the business they had sold to DONE!. Their recent acts do not preserve the status quo and they are manipulating the legal system to squash a competitor before the competitor even gets a chance to develop its business. To stop this injustice, plaintiff requests that this Court issue an Order placing the care of the domain names in the hands of a third party.

## 2.    STATEMENT OF FACTS

### A.    iVillage.com and Women.com Networks

iVillage, Inc. is a media company which was acquired by NBC Universal in

BARRERA & ASSOCIATES
1500 Rosecrans Avenue
Suite 500
Manhattan Beach, CA 90266

Memorandum of Points and Authorities
in Support of Ex Parte Application        2

2006 for $600 million. (Exhibit 2) iVillage now has approximately 34.5 million unique visitors per month, making it the largest content-driven community for women on the web. (Exhibit 3) As stated in Company press releases, the website offers a "unique destination that brings women together…where women can find meaningful content, real-life conversations and the tools they need to manage their busy lives." (Exhibit 4)

On March 19, 1999, iVillage achieved one of the most successful initial public offerings in history. (Exhibit 5) In 2001, iVillage acquired its main competitor, Women.com Networks. (Exhibit 6) Women.com Networks had a successful Initial Public Offering (IPO) of its own on October 15, 1999. (Exhibit 7) After its first day of trading on the Nasdaq Stock Exchange, Women.com Networks had a market capitalization in excess of $800 million. (Exhibit 7) As a result of this business, its numerous public filings, and the success of the Women.com site, many other websites still link to Women.com. (Exhibit 8)

As part of the transaction with Women.com Networks, iVillage acquired the domain names Women.com and Women.net. Subsequently, iVillage dismantled Women.com and Women.net and changed the Domain Name System ("DNS") settings so that Women.com and Women.net pointed to iVillage. (Exhibit 20) This means that a user who typed http://www.Women.com into their browser would be redirected and instead would go to http://www.iVillage.com. (Exhibit 10) iVillage "pointed" the domain names to iVillage.com to leverage the web traffic generated by the names Women.com and Women.net. (Exhibit 10)

B.    Sale of the Domain Names Women.com and Women.net to DONE!

In January 2010, iVillage, Inc. entered into a brokerage agreement with Sedo.com, LLC ("Sedo") whereby Sedo would act as iVillage's exclusive agent in selling the domain names Women.com and Women.net. (Exhibit 11) On January 12, 2010, NBC changed the DNS settings of the domain names and "parked" them with Sedo to help market the domain names as being "for sale." (Exhibit 9; Exhibit

BARRERA & ASSOCIATES
1500 Rosecrans Avenue
Suite 500
Manhattan Beach, CA 90266

Memorandum of Points and Authorities
in Support of Ex Parte Application          3

12) This change meant that NBC was not developing or marketing a product or service through the site, they simply had a template website comprised primarily of advertisements provided by Sedo. (Exhibit 12)  The sites remained "parked" with Sedo and indicated that they were for sale through Sedo from January 12, 2010 to June 7, 2010, after this action was filed.  (Exhibit 9)

On May 20, 2010, Benjamin L. Padnos, CEO of DONE! was contacted and informed that the domain names Women.com and Women.net were for sale. (Padnos Decl. ¶4)  Padnos is an Internet entrepreneur. (Padnos Decl. ¶3)  He was an early employee at Yahoo! and has been involved in operating Internet and technology businesses since 1994. (Padnos Decl. ¶3)

Padnos and DONE! contemplated buying the domain names and began an "opportunity screening exercise," conducted research, and spoke with several individuals about a potential business strategy that would fit with the names. (Padnos Decl. ¶5) Through this opportunity screening exercise, DONE! discovered a strategy that would enable it to immediately compete with iVillage. (Padnos Decl. ¶6) DONE! believed it could leverage a semantic content platform to create a compelling web site for women, quickly develop a brand, and generate a significant amount of web traffic because of the strength of the domain name. (Padnos Decl. ¶6; Ball Decl. ¶5)

In a recent press release, Padnos, said, "Women.com is irreplaceable to us. We are building a powerful content network and the Women.com domain is critical to our strategy. Our audience and the community we are building consists of modern, powerful, intelligent women. The name Women.com will resonate within this target market unlike any other name." (Exhibit 13)

DONE! made the decision to make a significant investment in the Women.com and Women.net properties with the goal of creating a robust content network, targeting women.

On May 21, 2010, Padnos made an offer of $1,000,000 for the domain

---

Memorandum of Points and Authorities
in Support of Ex Parte Application          4

1  names Women.com and Women.net. (Padnos Decl. ¶7; Exhibit 14)

2  　　　On May 24, 2010, through its agent, Sedo and Senior Broker, Jeffrey M.
3  Gabriel, NBC Universal accepted DONE!'s offer. (Exhibits 13, 14) Gabriel's email
4  acceptance stated the following: " . . . Congratulations! The offer for Women.com
5  has been accepted! Here are the next steps: NBC/GE will be creating a Bill of Sale
6  for this transaction. We have used this process in the past, and it is nothing out of
7  the ordinary. . . ." (Exhibit 14)

8  　　　On May 27, 2010, Padnos was contacted by Gabriel and was told that, "Jeff
9  Zucker has overruled the transaction" and that the deal was off.  Gabriel confirmed
10  Sedo had sold domains for NBC Universal in the past and that this was the first
11  time this type of thing had ever happened.  (Padnos Decl., ¶14)

12  　　　In response, DONE! filed this lawsuit on June 3, 2010, seeking specific
13  performance, declaratory relief and related claims.

14  　　　C.　　Actions Taken by NBC after This Lawsuit Was Filed

15  　　　On June 7, 2010, DONE! became aware that NBC changed the Domain
16  Name System ("DNS") settings for the sites Women.com and Women.net. (Padnos
17  Decl. ¶22)  NBC changed the DNS settings on the names Women.com and
18  Women.net. (Exhibit 9)  The sites no longer contained any content and they were
19  simply "dead links." (Exhibit 15) Sites that are dead links are flagged by Google,
20  their "Page Rank" is adjusted, and they are "de-indexed." (Exhibits 16, 17)

21  　　　On June 21, after the TRO ex parte application was heard and set for
22  hearing in state court, NBC redirected the Women.com and Women.net domains
23  to point to www.iVillage.com, allowing NBC to capitalize on the traffic generated
24  by Women.com and Women.net and is injurious to DONE!'s competitive position
25  vis-à-vis iVillage. (Exhibit 10, 16, 18; Padnos Decl. ¶19)

26  　　　Because of NBC's actions since the filing of this action, DONE! seeks a
27  temporary restraining order and a hearing on a preliminary injunction, which will
28  protect the subject domain names and preserve the status quo pending a trial on

BARRERA & ASSOCIATES
1500 Rosecrans Avenue
Suite 500
Manhattan Beach, CA 90266

Memorandum of Points and Authorities
in Support of Ex Parte Application　　　5

1  the merits.

2       D.    Background on Web Traffic Generated by Women.com

3      Women.com is a valuable name because of the traffic it generates. (Padnos

4  Decl. ¶4) There are two primary ways that web traffic is generated by the

5  Women.com domain name: (1) individuals who type "Women.com" directly into

6  their browser's URL; and (2) individuals who search on the keyword "women" or

7  other women-related keywords. (Ball Decl. ¶3) Women.com has a "Page Rank" of

8  7 out of 10. (Exhibit 8) Women.com has a high "Page Rank" and part of the

9  unique value of the names is that www.Women.com generated a significant

10  amount of traffic. (Exhibit 18)  Google's search algorithm takes into account links

11  from other pages. Sites with more links have a higher "Page Rank."  Pages with

12  many inbound links and a higher "Page Rank" generate more traffic through the

13  search engines such as Google. (Ball Decl. ¶5; Exhibit 16)  Because of the large

14  number of links and a high "Page Rank", Women.com is positioned to rank at the

15  top of search engines, which would generate millions of visitors to the site per

16  month. (Ball Decl. ¶5)

17      DONE! intends to leverage the domains' "Page Rank" within its own

18  network of websites. (Padnos Decl. ¶7) DONE! owns other web properties, which

19  would link to and from Women.com and Women.net. This would increase the

20  "Page Rank" of all of DONE!'s properties as well as the "Page Rank" of

21  Women.com and Women.net. However, it is extremely difficult to calculate a

22  measurable benefit to all of DONE!'s properties because Google's search engine

23  algorithm is proprietary. (Ball Decl. ¶4)

24      Google de-indexes sites to avoid sending users to "dead links." (Exhibit 18)

25  Once Google has de-indexed a site, it becomes increasingly difficult with time for

26  the site to achieve its previous "Page Rank." (Ball Decl. ¶6)  On June 7, 2010,

27  NBC caused Women.com and Women.net to become "dead links", which put them

28  at risk of becoming de-indexed and losing their "Page Rank" value. (*Id.* ¶6)

BARRERA & ASSOCIATES
1500 Rosecrans Avenue
Suite 500
Manhattan Beach, CA 90266

Memorandum of Points and Authorities
in Support of Ex Parte Application    6

### 3.   LEGAL ARGUMENT

A preliminary injunction will be granted upon a showing of either (1) a combination of probable success on the merits and the possibility of irreparable harm; or (2) serious questions regarding the merits and that the balance of hardships tips sharply in favor of the moving party. *Sony Computer Entertainment, Inc. v. Connectix Corp.*, 203 F.3d 596, 602 (9th Cir. 2000); *Cadence Design Systems, Inc., v. Avant! Corp.*, 125 F.3d 824, 928 (9th Cir. 1997)

Fed. R. Civ. P. 65(b)(1)(A) states that the court may issue a temporary restraining order only if: "specific facts in an affidavit or a verified complaint clearly show that immediate and irreparable injury, loss, or damage will result to the movant before the adverse party can be heard in opposition . . ."

### A.   There Is No Adequate Legal Remedy for the Relief Sought Herein

The United States Supreme Court has repeatedly held that "the basis for injunctive relief in the federal courts has always been irreparable injury and the inadequacy of legal remedies." *Weinberger v. Romero-Barcelo*, 456 U.S. 305, 312 (1982).

Women.com is a very unique name. There is only one Women.com in the world. When an individual types Women.com into their browser, whether that individual is in Los Angeles or Moscow, they will go to the same website.

In *Panavision Int'l, L.P.v. Toeppen*, 945 F.Supp. 1296, 1302 (C.D. Cal. 1996) the Court held that, "[T]he current organization of the Internet permits only one use of a domain name ... [O]nly one business can operate on the Internet with the domain name 'acme.com.'"

And in *Teletech Customer Care Mgmnt., Inc. v. Tele-Tech Co.*, 977 F. Supp. 1407, 1411 - 1412 (C.D. Cal. 1997), the court held, "[t]he fully qualified domain name' may not be repeated in the Internet.' 'A given domain name, the exact alphanumeric combination in the same network and using the same suffix, can only be registered to one entity." Because domain names are so unique, they are

---

Memorandum of Points and Authorities
in Support of Ex Parte Application          7

1 │ like real property and thus the loss of a domain name cannot be compensated for
2 │ with a legal remedy.

3 │       B.    <u>DONE! Is Suffering Irreparable Harm</u>

4 │     NBC's decision to point the Women.com and Women.net names to
5 │ iVillage.com is irreparably damaging DONE! In addition, there are two ways NBC
6 │ could potentially hurt DONE!: (1) it could again change the DNS settings for
7 │ Women.com and Women.net; and (2) it could transfer, sell, or develop the domain
8 │ names.

9 │         i.    <u>DONE! Is Suffering Irreparable Harm from NBC Forwarding</u>
10 │                 <u>Traffic from Women.com and Women.net to iVillage.com</u>

11 │     In *Kremen v. Cohen*, 337 F.3d 1024, 1030 (9th Cir. 2003), the court held
12 │ that, "Many registrants . . . invest substantial time and money to develop and
13 │ promote websites that depend on their domain names." This is precisely the case
14 │ here. DONE! intends to build a business around the domains Women.com and
15 │ Women.net and it intends to compete with iVillage. (Padnos Decl. ¶6). If NBC is
16 │ able to keep the domains pointed to iVillage, then DONE!'s competitive position
17 │ will continue to deteriorate. This is causing significant damage to DONE!, which
18 │ will not be capable of being repaired in the future.

19 │     When NBC decided to sell the domain names Women.com and Women.net,
20 │ it held out to the world that it was no longer affiliating itself with the domain
21 │ names. (Exhibit 11) A large portion of savvy Internet entrepreneurs knew that
22 │ NBC was selling the names. (Padnos Decl. ¶26) In addition, the technology
23 │ community now knows that there is a dispute over the domain names. (Exhibit 19;
24 │ Padnos Decl. ¶26). By pointing the domain names to iVillage.com, NBC is
25 │ causing damage to DONE!'s future competitive position. (Padnos Decl. ¶19)
26 │ Essentially, NBC is saying to the world: "we are the rightful owners of
27 │ Women.com and Women.net." This is simply not true and it is doing damage to
28 │ DONE! The damage DONE! is now incurring as a result of NBC's actions are

BARRERA & ASSOCIATES
1500 Rosecrans Avenue
Suite 500
Manhattan Beach, CA 90266

Memorandum of Points and Authorities
in Support of Ex Parte Application    8

more than pecuniary in nature and there is no legal remedy that will adequately compensate DONE!. *Los Angeles Memorial Coliseum Comm'n. v. National Football League*, 634 F.2d 1197, 1202 (9th Cir. 1980); *Regents of the University of California v. ABC, Inc.*, 747 F.2d 511, 519 (9th Cir. 1984).

        ii.      DONE! Will Suffer Irreparable Harm if NBC Is Allowed to Again Change the DNS Settings for Women.com and Women.net

When NBC changed the DNS settings for Women.com and Women.net on June 7, 2010, they created "dead links." (Exhibit 15)  If NBC again changes the DNS settings of the domain names, this will damage Women.com's "Page Rank." As previously stated, Google's algorithm for determining "Page Rank" is proprietary and evolutionary and it is difficult to determine the harm resulting from NBC's actions in creating dead links. (Ball Decl. ¶ 4)

As stated above, the names are immediately valuable to DONE! because (1) the names will resonate with DONE!'s target market, and (2) they generate a significant amount traffic. (Exhibit 18)  NBC has altered the DNS settings of the names several times, which has damaged the sites' ability to generate traffic now and in the future. Because of this, DONE! is suffering irreparable injury and will continue to suffer greatly unless this Court grants the relief requested herein.

        iii.     DONE! Will Suffer Irreparable Harm if NBC Is Allowed to Sell, Transfer, Market, Develop, or Encumber Women.com and Women.net in Any Way

DONE! purchased the names Women.com and Women.net to develop a content network targeting women. The only way DONE! can do this in the way they had planned is through the specific domain names they purchased. (Padnos Decl. ¶7) If NBC is able to sell, transfer, market, or develop the name before a trial on the merits, then DONE! will not be able to enforce its rights and will be hurt significantly in a way that cannot be later repaired.

BARRERA & ASSOCIATES
1500 Rosecrans Avenue
Suite 500
Manhattan Beach, CA 90266

Memorandum of Points and Authorities
in Support of Ex Parte Application     9

1

iv.    The Threat of Irreparable Harm Is Imminent

2    The threat of "irreparable harm" must be immediate ... as opposed to a mere
3    possibility of harm some time in the future: "A plaintiff must do more than merely
4    allege imminent harm sufficient to establish standing; a plaintiff must demonstrate
5    immediate threatened injury as a prerequisite to preliminary injunctive relief."
6    *Caribbean Marine Services Co., Inc. v. Baldrige*, 844 F.2d 668, 674 (9th Cir.
7    1988).

8    Irreparable harm is not only imminent, but is currently taking place. NBC is
9    currently usurping traffic from the names Women.com and Women.net and giving
10    that traffic to iVillage, DONE!'s competitor. In addition, as stated above, NBC
11    recently changed the DNS settings, which damages DONE!'s competitive position
12    and impairs the value of the domains. It also provides evidence that NBC cannot
13    be trusted with the name. (Exhibit 9) In addition, there is imminent harm from the
14    threat of NBC transferring, selling, marketing or encumbering the site in some
15    other way.

16    C.    The Balance of Equities Tips Decidedly in DONE!'s Favor and
17    Supports Awarding the Requested Injunctive Relief

18    In determining whether to award a preliminary injunction, the trial court
19    must consider the likelihood that the plaintiff will prevail on the merits and the
20    possible harm to the parties from the granting or denial of the injunction. *Sierra*
21    *On-Line, Inc. v. Phoenix Software, Inc.*, 739 F.2d 1415 (1984).

22    In *Benda v. Grand Lodge of the International Association of Machinists*,
23    584 F.2d 308, 315 (9th Cir.1978), the court held, "The critical element in
24    determining the test to be applied is the relative hardship to the parties. If the
25    balance of harm tips decidedly toward the plaintiff, then the plaintiff need not
26    show as robust a likelihood of success on the merits as when the balance tips less
27    decidedly."

28

Memorandum of Points and Authorities
in Support of Ex Parte Application        10

i.    DONE! will suffer greater Injury from denial of the injunction than defendants are likely to suffer if it is granted

The domain name Women.com is hugely important to DONE!'s business, but is not as important to NBC. NBC's mismanagement of the web properties and the fact that NBC has not individually developed the names since approximately January 27, 2005, is evidence that the domain names are not as important to NBC as they are to DONE!. (Exhibit 20)

Conversely, the names will greatly increase DONE!'s business. They will be at the heart of DONE!'s business and are core to DONE!'s strategy. (Padnos Decl. ¶10) DONE! is likely to suffer great injury if injunctive relief is not granted and NBC will suffer minimal damage. *Benda*, 739 F.2d at 315.

ii.    There Is a Reasonable Probability that DONE! Will Prevail on the Merits

Plaintiff is seeking specific performance. To be granted specific performance, plaintiff must show that there is no adequate remedy at law (see above), the existence and breach of a contract, the terms of the contract must be sufficiently definite and certain or terms must be capable of being supplemented by custom and business usage, and the plaintiff must have satisfied his conditions or be ready and able to satisfy its conditions under the contract. *Blackburn v. Charnley*, 117 Cal.App.4th 758, 766 (2004).

a.    There Was a Contract Between NBC and DONE!, which NBC Breached

The standard elements of a claim of breach of contract are (1) the existence of a contract; (2) plaintiff's performance or excuse for non-performance, (3) defendant's breach, and (4) damages to plaintiff therefrom. *Wall Street Network, Ltd. v. New York Times, Co.*, 164 Cal.App.4th 1171, 1178 (2008).

On May 21, Padnos sent NBC the following offer for the domain names Women.com and Women.net: "This email confirms my offer of $1MM valid until

BARRERA & ASSOCIATES
1500 Rosecrans Avenue
Suite 500
Manhattan Beach, CA 90266

Memorandum of Points and Authorities
in Support of Ex Parte Application    11

5pm on Monday, May 24, 2010." (Exhibit 14)

NBC accepted this offer prior to its expiration at 5pm on Monday, May, 24, 2010: "Alan and Ben, Congratulations! The offer for Women.com has been accepted!" (Exhibit 14) Thus, there was an offer and acceptance. In addition, $1,000,000 was adequate consideration for the names. *Wall Street Network, Ltd.*, 164 Cal.App. at 1178.

Prior to accepting the offer from DONE!, NBC, through its agent Gabriel, inquired into whether DONE! was ready and able to satisfy its conditions under the contract: "Ben, It was nice speaking with you today. I am confirming that I have received the offer. Question: Payment . . . will be made in one payment correct?" (Exhibit 14)

Padnos responded to this request, "Correct - One wire transfer payment." (Exhibit 14) Plaintiff was and is still ready and standing by to pay the $1,000,000 and would have already paid this sum "but for" defendants' breach of the purchase contract. However, Defendants have failed and refused to transfer the property to Plaintiff. Through its agent, Sedo, NBC informed defendant that it was NOT going to perform on its promise. This was a breach of the agreement. *Blair v. Brownstone Oil & Refining Co.*, 35 Cal.App., 394, 170 p. 160 (1917).

        b.     The Terms of the Contract Were Sufficiently Definite and Certain or Capable of Being Supplemented by Custom and Business Usage

The terms of the contract were sufficiently definite and certain. *Weddington Productions, Inc. v. Flick*, 60 Cal.App. 4th 793, 811 (1998). DONE! was to pay $1,000,000 for the domain names Women.com and Women.net. In return NBC would give DONE! title to the names and transfer them through Sedo to DONE!. Further, Sedo represented that additional paperwork was merely a formality. Sedo stated in the same acceptance email to DONE!, "Here are the next steps: NBC/GE will be creating a Bill of Sale for this transaction. We have used this process in the

BARRERA & ASSOCIATES
1500 Rosecrans Avenue
Suite 500
Manhattan Beach, CA 90266

Memorandum of Points and Authorities
in Support of Ex Parte Application          12

1  past, and it is nothing out of the ordinary. What they will need from you is the

2  following . . ." (Exhibit 14) Thus, even if the terms were not sufficiently definite

3  or certain, the Bill of Sale document, which may contain additional terms, is

4  capable of supplying additional terms which are customary and are regularly used

5  for the business purpose of selling and transferring the domain names. *Mueller v.*

6  *Chandler*, 217 Cal.App.2d 521, 523 (1963).

7            iii.   Sedo was NBC's Agent and Had the Power to Enter into a

8                   Contract on Behalf of NBC

9      Cal. Civ. Code § 2315 states, "An agent has such authority as the principal,

10  actually or ostensibly, confers upon him." In *Myers v. Stephens*, 233 Cal.App.2d

11  104, 112 (1965), the court stated, "It is the general rule that an agent may bind his

12  principal if he does not exceed the power with which he is actually or ostensibly

13  vested." And, in *Wallace v. Sinclair*, 114 Cal.App.2d 220, 229-230 (1952), the

14  court stated the following:

15      Agency is the relation that results from the act of one person, called
the principal, who authorizes another, called the agent, to conduct one

16  or more transactions with one or more third persons and to exercise a
degree of discretion in effecting the purpose of the principal. The

17  heart of agency is expressed in the ancient maxim: ' *Qui facit per
alium facit per se.'* . . . The extent of the agency is measured by the

18  authority conferred upon the agent, actually or ostensibly and his
power is sufficient to do everything that is necessary, proper or usual

19  to accomplish the purpose of the principal. Civil Code, secs. 2315,
2316, 2317, 2318, 2319, 2320, 2330. The agent has actual authority

20  defined by section 2316 unless limited by the principal, and his
ostensible authority is unlimited except as to those persons having

21  knowledge of the restrictions imposed upon the agency, sec. 2318.

22      Cal.Civ.Code § 2317 states the following with respect to ostensible

23  authority: "Ostensible authority is such as a principal, intentionally or by want of

24  ordinary care, causes or allows a third person to believe the agent to possess."

25  Cal.Civ.Code § 2316 states that, "Actual authority is such as a principal

26  intentionally confers upon the agent, or intentionally, or by want of ordinary care,

27  allows the agent to believe himself to possess."

28      Sedo, at a minimum, had ostensible authority to enter NBC into a contract

BARRERA & ASSOCIATES
1500 Rosecrans Avenue
Suite 500
Manhattan Beach, CA 90266

Memorandum of Points and Authorities
in Support of Ex Parte Application    13

1  with DONE!. Sedo was hired by NBC on January 13, 2010 to broker the domain
2  names Women.com and Women.net. (Exhibit 11) The agreement states, in
3  paragraph 3.1, the following about the extent of the power of agency vested in
4  Sedo: "Sedo shall act as the agent for Domain Seller with regard to an actual or
5  potential sale of any or all of Domains set forth hereunder." (Exhibit 11)

6       NBC caused both Sedo and DONE! to believe that Sedo had the authority to
7  bind NBC in contract. This is evidenced by the following:

8      •    The domains continued to be listed by Sedo. NBC left the domains in
9           the hands of Sedo. If a buyer went to the site Women.com or
10          Women.net, they would see that the sites were for sale by Sedo.
11          (Exhibit 12)

12     •    Sedo was communicating with NBC about the transaction. Sedo's
13          Gabriel sent Padnos the following email: "Ben and Alan, The offer
14          has been made to my contact. He said he is going to get back to me as
15          soon as possible." Later Gabriel sent the acceptance email, stating
16          that NBC had accepted the offer, "Congratulations! The offer for
17          Women.com has been accepted." Therefore, Sedo was in direct
18          communication with NBC and the offer was accepted by NBC.
19          (Exhibit 14)

20     •    NBC admitted that Sedo was its agent during the transaction. After
21          Gabriel communicated to Padnos that NBC was not going to go
22          through with the deal, he said that his contact at NBC told him that,
23          "you earned your commission." (Padnos Decl., ¶9)

24     Because NBC caused both Sedo and DONE! to believe that Sedo had
25  agency powers, Sedo did in fact have actual and at a minimum, ostensible
26  authority to enter into a contract on behalf of NBC. As stated in, *C.A.R. Transp.*
27  *Brokerage Co., Inc. v. Darden Restaurants, Inc.*, 213 F.3d 474, 479 (9th Cir.
28  2000), "An agent acting within his apparent or ostensible authority binds the

BARRERA & ASSOCIATES
1500 Rosecrans Avenue
Suite 500
Manhattan Beach, CA 90266

Memorandum of Points and Authorities
in Support of Ex Parte Application        14

1  principal where the principal has intentionally or negligently allowed others to
2  believe the agent has authority." Therefore, because defendants intentionally and
3  negligently allowed DONE! and Padnos to believe Sedo was its agent with respect
4  to the sale of Women.com and Women.net, Sedo was in fact NBC's agent and
5  entered NBC into a binding contract.

6          iv.     Conclusion: In Balancing the Equities, The Court Must Find in
7                  Favor of DONE!

8          The names Women.com and Women.net are critical to DONE!'s business
9  and strategy. At the same time, the names are not important to NBC, as evidenced
10 by their removal of all content from the sites, the creation of the "dead links," and
11 that they haven't developed the sites since January, 2005. Based on the evidence
12 presented, DONE! has shown that its entitled to the relief demanded, and the
13 balancing of the equities tips decidedly in favor of DONE!.

14      D.      Transferring the Domain Name and Enjoining NBC Universal from
15              Selling Women.com and Women.net Preserves the Status Quo
16              Pending a Trial on the Merits

17         The issuance of a temporary restraining order, like the issuance of a
18 temporary injunction, is to maintain the status quo between the parties. *Larry P. v.*
19 *Riles*, 502 F.2d 963, 965 (9th Cir. 1974). Plaintiff DONE! has limited the relief
20 requested to what is necessary to preserve the status quo. Prior to deciding to sell
21 the domains, Women.com and Women.net, NBC simply had the domains
22 "parked." This means that NBC was not actively involved in developing,
23 marketing, or deriving revenue of any sort through the domain properties.

24         DONE! is simply asking that the court order the names transferred to a
25 neutral third-party. Once a third-party has control, the third-party will set up a
26 website and preserve the status quo pending a trial on the merits.

27         NBC may argue that the status quo is that the domains point to Women.com
28 and Women.net. However, this argument is false. Prior to the controversy, the

BARRERA & ASSOCIATES
1500 Rosecrans Avenue
Suite 500
Manhattan Beach, CA 90266

Memorandum of Points and Authorities
in Support of Ex Parte Application        15

domains pointed to a parked page at Sedo.com. (Exhibit 12) In *Tanner Motor Livery, Ltd. v. Avis, Inc.*, 316 F.2d 804, 809 (9th Cir. 1963), the court held, "It has been said, and we agree, that: 'The status quo is the last uncontested status which preceded the pending controversy.' *(Westinghouse Elec. Corp. v. Free Sewing Mach. Co.*, 7 Cir., 256 F.2d 806, 808 (1958)).

**4.      NOTICE PURSUANT TO LOCAL RULE 7-19**

Plaintiff's counsel, Patricio T.D. Barrera gave proper notice of Plaintiff's intent to file the application for an *ex parte* TRO and the types of relief sought through the application. Plaintiff's counsel gave this notice via email on July 1, 2010 to Scott Edelman and Michael Dore from Gibson, Dunn & Crutcher LLP. (Exhibit 1)   Later the same day, Mr. Dore responded to the advance notification email and indicated that defendants would oppose this application by filing a written opposition.  (Id.)

**5.      CONCLUSION**

For the reasons discussed above, plaintiff respectfully requests that this Court grant Plaintiff injunctive relief, as set forth in the proposed order, which includes an Order that NBC transfer the domains to a neutral third party and that NBC be enjoined from transferring, selling, marketing, developing, or encumbering the sites in any way. DONE!'s motion should be granted because a legal remedy will be inadequate, DONE! will suffer irreparable harm if this motion is not granted, DONE! has a reasonable probability of success on the merits, and DONE! will suffer greater injury from denial of the injunction than defendants are likely to suffer if it is granted.

DATED:  July 2, 2010                    BARRERA & ASSOCIATES

By: ___ */s/   Patricio T.D. Barrera*
Patricio T.D. Barrera
Stephen G Svajian
Attorneys for Plaintiff DONE! Ventures, LLC