GIBSON, DUNN & CRUTCHER LLP
SCOTT EDELMAN, SBN 116927
sedelman@gibsondunn.com
2029 Century Park East, Suite 4000
Los Angeles, California 90067-3026
Telephone: (310) 552-8500
Facsimile: (310) 551-8741

MICHAEL DORE, SBN 227442
mdore@gibsondunn.com
333 South Grand Avenue
Los Angeles, California 90071-3197
Telephone: (213) 229-7000
Facsimile: (213) 229-7520

Attorneys for Defendants
General Electric Company;
NBC Universal, Inc.; and iVillage, Inc.

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

WESTERN (SPRING) DIVISION

| | |
|---|---|
| DONE! VENTURES, LLC, a Delaware Limited Liability Company,<br><br><br>Plaintiff,<br><br>vs.<br><br>GENERAL ELECTRIC COMPANY, a New York Corporation; NBC UNIVERSAL, INC., a Delaware Corporation; and IVILLAGE, INC., a Delaware Corporation, and DOES 1 through 10, inclusive,<br><br>Defendants. | CASE NO. CV10-04420-SJO(JCx)<br><br>**DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISMISS PLAINTIFF'S COMPLAINT, AND, ALTERNATIVELY, TO TRANSFER VENUE**<br><br>[MEMORANDUM OF POINTS AND AUTHORITIES; DECLARATION OF MICHAEL H. DORE RE MEET AND CONFER; AND [PROPOSED] ORDER SUBMITTED CONCURRENTLY HEREWITH]<br><br>Date:           October 12, 2010<br>Time:           10:00 a.m.<br>Courtroom:  1<br><br>The Honorable S. James Otero |

Gibson, Dunn &
Crutcher LLP

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that on October 12, 2010, at 10:00 a.m., or as soon thereafter as the matter may be heard before the Honorable S. James Otero, located at Courtroom 1, United States District Court, 312 North Spring Street, 2nd Floor, Los Angeles, California 90012, Defendants General Electric Company; NBC Universal, Inc.; and iVillage, Inc. (the "NBC Defendants") will and hereby do move for an Order dismissing with prejudice Plaintiff DONE! Ventures LLC's Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). The Complaint makes clear on its face that no binding contract was formed between any of the parties because there was no meeting of the minds on a material term: the property for sale. Moreover, the parties' correspondence (incorporated in the Complaint) contemplates the completion of a bill of sale, which never took place. Thus, even if Plaintiff had a colorable claim that there was a meeting of the minds between the parties (which it does not), at most Plaintiff's allegations point to an unenforceable "agreement to agree." Accordingly, the Complaint should be dismissed with prejudice.

Alternatively, pursuant to 28 U.S.C. § 1404(a), the NBC Defendants move this Court to transfer the action to the United States District Court for the Southern District of New York. The "gravitational center" of this dispute is on the East Coast, where the NBC Defendants and their broker are located, where all discussions between the broker and the NBC Defendants took place, and where the majority of the witnesses relevant to this litigation reside. The convenience of the parties and the witnesses, as well as the interest of justice, strongly favors the Southern District of New York over the Central District of California.

This Motion is made following the conference of counsel pursuant to L.R. 7-3, which occurred on August 11, 2010.

This Motion is based on this Notice of Motion and Motion, the accompanying Memorandum of Points and Authorities, the attached Declaration of Michael H. Dore Re Meet and Confer, all pleadings, records, and papers filed in this action,

Gibson, Dunn & Crutcher LLP

1    the argument of counsel, any supplemental memoranda that may be filed by the

2    parties, and such further evidence as the Court may consider at or before the hearing

3    of this Motion.

4    Dated:  August 20, 2010

GIBSON, DUNN & CRUTCHER LLP
Scott A. Edelman
Michael H. Dore


By:    _____ /s/ Scott Edelman*_____

Attorneys for Defendants General Electric
Company; NBC Universal, Inc.; and iVillage,
Inc.


* I hereby attest that I have on file all holograph
signatures for any signatures indicated by a
"conformed" signature (/s/) within this efiled
document.

Gibson, Dunn &
Crutcher LLP

3

GIBSON, DUNN & CRUTCHER LLP
SCOTT EDELMAN, SBN 116927
sedelman@gibsondunn.com
2029 Century Park East, Suite 4000
Los Angeles, California 90067-3026
Telephone: (310) 552-8500
Facsimile: (310) 551-8741

MICHAEL DORE, SBN 227442
mdore@gibsondunn.com
333 South Grand Avenue
Los Angeles, California 90071-3197
Telephone: (213) 229-7000
Facsimile: (213) 229-7520

Attorneys for Defendants
General Electric Company;
NBC Universal, Inc.; and iVillage, Inc.

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

## WESTERN (SPRING) DIVISION

| | |
|---|---|
| DONE! VENTURES, LLC, a Delaware Limited Liability Company,<br><br>Plaintiff,<br><br>vs.<br><br>GENERAL ELECTRIC COMPANY, a New York Corporation; NBC UNIVERSAL, INC., a Delaware Corporation; and IVILLAGE, INC., a Delaware Corporation, and DOES 1 through 10, inclusive,<br><br>Defendants. | CASE NO. <u>CV10-04420-SJO(JCx)</u><br><br>**DEFENDANTS' MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS PLAINTIFF'S COMPLAINT, AND, ALTERNATIVELY, TO TRANSFER VENUE**<br><br>[NOTICE OF MOTION AND MOTION; DECLARATION OF MICHAEL H. DORE RE MEET AND CONFER; AND [PROPOSED] ORDER SUBMITTED CONCURRENTLY HEREWITH]<br><br>Date:          October 12, 2010<br>Time:          10:00 a.m.<br>Courtroom:   1<br><br>The Honorable S. James Otero |

Gibson, Dunn &
Crutcher LLP

# TABLE OF CONTENTS

<u>Page</u>

INTRODUCTION..................................................................................1

FACTUAL BACKGROUND .................................................................2

ARGUMENT .......................................................................................3

I.  THE COURT SHOULD DISMISS THE COMPLAINT BECAUSE IT
    MAKES CLEAR THAT NO CONTRACT WAS FORMED. ..........................3

    A.  The Standard for Dismissal Under Federal Rule 12(b)(6). ......................3

    B.  DONE Has Failed To State A Breach Of Contract Claim As A
        Matter of Law Because The Parties Never Formed A Contract...............5

    C.  Even If DONE Has Pleaded A Meeting Of The Minds, Which It
        Has Not, It Has Not Stated A Breach Of Contract Claim Because,
        At Most, The Parties Had An Agreement To Agree................................7

II. IN THE ALTERNATIVE, THE COURT SHOULD TRANSFER THE
    ACTION TO THE SOUTHERN DISTRICT OF NEW YORK.......................8

    A.  This Action Might Have Been Brought Initially In the Southern
        District of New York.........................................................................9

    B.  The Convenience of Witnesses and Parties Strongly Favors
        Transfer to the Southern District of New York. ...................................9

    C.  Transfer Will Promote Judicial Economy By Avoiding Duplicative
        Litigation. .....................................................................................10

    D.  The Interests of Justice Favor Transfer.............................................12

        1.  Private Interest Factors .............................................................12

            a.  DONE's Choice of Forum Is Not Dispositive. ..................12

            b.  Ease of Access to Sources of Proof, Availability of
                Compulsory Process, and Other Practical Problems
                Favor Transfer. .......................................................13

Gibson, Dunn &
Crutcher LLP

i

# TABLE OF CONTENTS
## [Continued]

Page

2.    Public Interest Factors ................................................................. 14

    a.    California Law Will Not Govern This Case. ...................... 14

    b.    Other Public Interest Factors Also Favor Transfer. ............ 15

CONCLUSION .................................................................................................... 15

Gibson, Dunn &
Crutcher LLP

# TABLE OF AUTHORITIES

Page(s)

## Cases

*A.J. Indus., Inc. v. U.S. Dist. Court for Cent. Dist. of Cal.,*
   503 F.2d 384 (9th Cir. 1974) .................................................................10

*ABF Capital Corp. v. Berglass,*
   30 Cal. Rptr. 3d 588 (Cal. Ct. App. 2005) ...........................................15

*Am. Employers Group, Inc. v. Employment Dev. Dep't,*
   65 Cal. Rptr. 3d 233 (Cal. Ct. App. 2007) .............................................5

*Arete Power, Inc. v. Beacon Power Corp.,*
   No. C 07-5167 WDB, 2008 WL 508477 (N.D. Cal. Feb. 22, 2008) ......9

*Ashcroft v. Iqbal,*
   129 S. Ct. 1937 (2009) ............................................................................4

*Beck v. Am. Health Group Int'l, Inc.,*
   260 Cal. Rptr. 237 (Cal. Ct. App. 1989) .........................................5, 6, 8

*Bell Atl. Corp. v. Twombly,*
   550 U.S. 544 (2007) ................................................................................4

*Bustamante v. Intuit, Inc.,*
   45 Cal. Rptr. 3d 692 (Cal. Ct. App. 2006) .............................................5

*Coto Settlement v. Eisenberg,*
   593 F.3d 1031 (9th Cir. 2010) ................................................................4

*Doe I v. Wal-Mart Stores, Inc.,*
   572 F.3d 677 (9th Cir. 2009) ..................................................................3

*Express Indus. & Terminal Corp. v. N.Y. State Dep't of Transp.,*
   715 N.E.2d 1050 (N.Y. 1999) .............................................................5, 6

*Fields v. Legacy Health Sys.,*
   413 F.3d 943 (9th Cir. 2005) ................................................................14

*Frontier Oil Corp. v. RLI Ins. Co.,*
   63 Cal. Rptr. 3d 816 (Cal. Ct. App. 2007) ...........................................14

*Gates Learjet Corp. v. Jensen,*
   743 F.2d 1325 (9th Cir. 1984) ..............................................................13

*Gulf Oil Corp. v. Gilbert,*
   330 U.S. 501 (1947) ..............................................................................14

*Hernandez v. Graebel Van Lines,*
   761 F. Supp. 983 (E.D.N.Y. 1991) .......................................................12

*Ironworkers Local Union No. 68 & Participating Employers Health &*
   *Welfare Fund v. Amgen,*
   No. CV 07-5157 PSG (AGRx), 2008 WL 312309 (C.D. Cal. Jan. 22,
   2008) ......................................................................................................13

*Joe Boxer Corp. v. R. Siskind & Co.,*
   No. C 98-4899 SI, 1999 WL 429549 (N.D. Cal. June 8, 1999) ...........10

*Jordan Panel Sys., Corp. v. Turner Constr. Co.,*
   841 N.Y.S.2d 561 (N.Y. App. Div. 2007) ...............................................8

Gibson, Dunn &
Crutcher LLP

# TABLE OF AUTHORITIES
## [Continued]

Page(s)

*Joseph Martin, Jr., Delicatessen, Inc. v. Schumacher,*
  417 N.E.2d 541 (N.Y. 1981) ................................................5, 8

*Ledbetter Erection Corp. v. Workers' Comp. Appeals Bd.,*
  203 Cal. Rptr. 396 (Cal. Ct. App. 1984) ........................14

*Marcus & Millichap Real Estate Inv. Brokerage Co. v. Hock Inv. Co.,*
  80 Cal. Rptr. 2d 147 (Cal. Ct. App. 1998) ......................7

*May v. Wilcox,*
  582 N.Y.S.2d 294 (N.Y. App. Div. 1992) ........................5

*Metz v. U.S. Life Ins. Co.,*
  674 F. Supp. 2d 1141 (C.D. Cal. 2009) ....................9, 12

*Piper Aircraft Co. v. Reyno,*
  454 U.S. 235 (1981) ..................................................12

*Posven, C.A. v. Liberty Mut. Ins. Co.,*
  303 F. Supp. 2d 391 (S.D.N.Y. 2004) ...........................11

*Roth v. Garcia Marquez,*
  942 F.2d 617 (9th Cir. 1991) ..................................4, 5

*Roth v. Jennings,*
  489 F.3d 499 (2d Cir. 2007) .........................................5

*Saleh v. Titan, Corp.,*
  361 F. Supp. 2d 1152 (S.D. Cal. 2005) ....................9, 15

*Sparling v. Hoffman Constr. Co.,*
  864 F.2d 635 (9th Cir. 1988) .......................................9

*Stewart Org., Inc. v. Ricoh Corp.,*
  487 U.S. 22 (1988) .......................................................8

*Szegedy v. Keystone Food Prods., Inc.,*
  No. CV 08-5369 CAS (FFMx), 2009 WL 2767683 (C.D. Cal. Aug. 26,
  2009) .......................................................................11

*Trade & Indus. Corp. (USA) v. Euro Brokers Inv. Corp.,*
  635 N.Y.S.2d 227 (N.Y. App. Div. 1995) .........................7

*Van Dusen v. Barrack,*
  376 U.S. 612 (1964) ...............................................8, 10

*Zeta-Jones v. Spice House,*
  372 F. Supp. 2d 568 (C.D. Cal. 2005) .......................12, 13

**Statutes**

28 U.S.C. §1391(a) ........................................................9

28 U.S.C. §1404(a) ........................................................8

Cal. Civ. Code § 1646 ...................................................14

**Rules**

Fed. R. Civ. P. 45(c)(3) ..................................................13

Gibson, Dunn &
Crutcher LLP

iv

## **INTRODUCTION**

The NBC Defendants move the Court to dismiss the Complaint under Federal Rule of Civil Procedure 12(b)(6). Plaintiff and a broker for the NBC Defendants began, but never finalized, negotiations about the sale of a domain name. Nevertheless, Plaintiff has sued for breach of contract.

The Complaint makes clear on its face that no binding contract was formed because there was no meeting of the minds on a material term: the property for sale. Plaintiff alleges that it made a $1 million offer for two domain names: women.com and women.net. Yet, the correspondence from the NBC Defendants' broker, which Plaintiff attaches to the Complaint and specifically incorporates by reference, states that the NBC Defendants would accept $1 million for women.com *alone*. Thus, the parties never agreed on what could be purchased for the $1 million price.

Further, the parties' correspondence states that the NBC Defendants required specified information about the Plaintiff and the completion of a bill of sale before a deal could be consummated. As Plaintiff admits in the Complaint, no bill of sale was ever drafted or signed. Therefore, even if the parties had reached a meeting of the minds about what property was for sale and at what price, which they did not, at most, there was an unenforceable agreement to agree. Plaintiff's breach of contract claim thus fails as a matter of law.

Alternatively, the NBC Defendants move the Court to transfer this case under 28 U.S.C. § 1404(a), for the convenience of the witnesses and the parties, to the Southern District of New York. The "gravitational center" of this dispute is on the East Coast, where the NBC Defendants and their broker are located, where all discussions between the broker and the NBC Defendants took place, and where the majority of the witnesses relevant to this litigation reside.

Gibson, Dunn &
Crutcher LLP

1

## **FACTUAL BACKGROUND**

For the purposes of this motion, the NBC Defendants accept the Complaint's allegations as true.  According to the Complaint, Plaintiff DONE! Ventures, LLC (DONE) is in the business of Internet media development, marketing, and publishing.  Compl. ¶ 8.  DONE alleges that on May 20, 2010, its Chief Executive Officer Benjamin Padnos learned that the domain names women.com and women.net were for sale by NBC Universal, Inc. (NBCU).  *Id.* at ¶ 9.  Padnos also learned that NBCU had hired Sedo.com, LLC (Sedo) to broker the sale.  *Id.*

On May 21, 2010, Padnos participated in a conference call with Jeffrey Gabriel, NBCU's broker at Sedo.  *Id.* at ¶ 12.  DONE alleges that, during the call, Padnos verbally offered $1 million for both women.com and women.net.  *Id.*

Following this call, Gabriel and Padnos engaged in a series of email exchanges.  *Id.* at ¶¶ 12-14 & Ex. A.  DONE has attached these emails to the Complaint and specifically incorporates them by reference.  *Id.* at ¶ 13.  Further, DONE alleges that these emails constitute the parties' contract and refers to the emails as the parties' "Agreement."  *Id.*

The alleged Agreement consists of the following: on May 21, the same day as the conference call between Gabriel and Padnos, Gabriel sent Padnos an email with the subject line "Women.com."  Compl. Ex. A.  In the email, Gabriel provided Padnos with his contact information.  *Id.*

Padnos responded to Gabriel's e-mail several hours later.   The entirety of Padnos's email states: "Jeff, This email confirms my offer of $1MM valid until 5 pm on Monday, May 24, 2010."  *Id.*  The subject line also was "Women.com."  *Id.*

On May 24, 2010, Gabriel sent another email to Padnos, and Padnos's broker, Alan Hack.  *Id.*  This email states in relevant part:

> Alan and Ben, Congratulations!  **The offer for Women.com has been accepted!**  Here are the next steps: NBC/GE will be creating a Bill of Sale for this transaction. We have used this process in the past and it is nothing out of the ordinary.  What they will need from you is the following: Name of your

corporation, Legal Entity, Type of Corporation (Delaware Corporation for example), Official Address, Contact Information.

*Id.* (emphasis added).  This email also has "Women.com" as the subject line.

On May 27, 2010, three days later, Gabriel told Padnos that NBCU would not be pursuing a transaction with DONE.  Compl. ¶ 16.  The parties had not yet negotiated or drafted a bill of sale.  *Id.* at ¶¶ 14-16.

The alleged Agreement between the parties makes no mention of women.net.  Compl. Ex. A.  To the contrary, it states only that NBCU had accepted an offer for women.com.  *Id.*

On June 3, 2010, DONE filed a Complaint in the Superior Court of the State of California, Los Angeles County, alleging one count of breach of contract and demanding specific performance, injunctive relief and declaratory relief.   The Complaint names General Electric Company, NBCU, and iVillage, Inc. (collectively "the NBC Defendants") as defendants.  Compl. ¶¶ 2-4.

NBCU and General Electric, the only defendants initially served, removed to this Court on the basis of diversity jurisdiction on June 15, 2010.

## **ARGUMENT**

### I.   **THE COURT SHOULD DISMISS THE COMPLAINT BECAUSE IT MAKES CLEAR THAT NO CONTRACT WAS FORMED.**

#### A.   **The Standard for Dismissal Under Federal Rule 12(b)(6).**

The Court should dismiss the Complaint if, taking all the Complaint's well-pleaded allegations as true and viewing them in the light most favorable to DONE, it concludes that DONE has failed to state a claim that would entitle it to relief.  *Doe I v. Wal-Mart Stores, Inc.*, 572 F.3d 677, 681-83 (9th Cir. 2009) (affirming dismissal of contract claims).  Conclusory allegations, unwarranted deductions of fact, and legal conclusions masquerading as factual allegations are not accepted as true and are not

1  sufficient to state a claim.  *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949-50 (2009); *Bell*

2  *Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

3  The Supreme Court recently reinvigorated the federal pleading standard.  As it

4  made clear in *Twombly*, a complaint's "basic deficiency should . . . be exposed at the

5  point of minimum expenditure of time and money by the parties and the court."  550

6  U.S. at 558 (internal citation omitted).  Thus, to survive a motion to dismiss, a

7  complaint must state "sufficient factual matter, accepted as true, to 'state a claim to

8  relief that is plausible on its face.'"  *Iqbal*, 129 S. Ct. at 1949.  The facial plausibility

9  requirement is a context-specific inquiry that requires the Court "to draw on its

10  judicial experience and common sense."  *Id.* at 1950.  And although it does not rise to

11  the level of a "probability requirement," the plausibility standard requires that the

12  Court be able to infer "*more than the mere possibility*" of wrongdoing.  *Id.* (emphasis

13  added).

14  In evaluating a motion to dismiss under Rule 12(b)(6), the Court may consider

15  all documents incorporated into the Complaint by reference.  *Coto Settlement v.*

16  *Eisenberg*, 593 F.3d 1031, 1038 (9th Cir. 2010).  The meaning of such documents,

17  including correspondence, is a question of law for the Court. [1]  *See Roth v. Garcia*

18  *Marquez*, 942 F.2d 617, 625-27 (9th Cir. 1991) (interpreting parties' correspondence

19  as matter of law and affirming dismissal of contract claim under Rule 12(b)(6) for

20  failure to show binding contract); *see also, e.g., Beck v. Am. Health Group Int'l, Inc.,*

---

[1]  There is no conflict between California and New York law on the issues relevant to the NBC Defendants' motion under Federal Rule 12(b)(6) – namely, whether the parties entered into a binding contract.  Thus, the NBC Defendants have cited to both California and New York law to support their argument that DONE has failed to state a claim.

Should the Court conclude that DONE has stated a binding contract in the Complaint, New York substantive law should apply to the *interpretation* of any contract between the parties.  *Infra*, Section II.D.2.a.

Gibson, Dunn &
Crutcher LLP

4

260 Cal. Rptr. 237, 241-42 (Cal. Ct. App. 1989) (interpreting letter as matter of law). Further, where the allegations of the Complaint contradict the contents of such documents, the documents control. *See Garcia Marquez*, 942 F.2d at 625 n.1 ("[W]hen the allegations of the complaint are refuted by an attached document, the Court need not accept the allegations as being true."); *see also Roth v. Jennings*, 489 F.3d 499, 511 (2d Cir. 2007).

**B.     DONE Has Failed To State A Breach Of Contract Claim As A Matter of Law Because The Parties Never Formed A Contract.**

DONE's breach of contract claim fails as a matter of law because there was no meeting of the minds between the parties on the material terms of a contract.

A party can recover for breach of contract only if a contract has been formed. *See, e.g., Am. Employers Group, Inc. v. Employment Dev. Dep't*, 65 Cal. Rptr. 3d 233, 241-42 (Cal. Ct. App. 2007) (affirming dismissal of breach of contract claim for lack of contract formation); *Express Indus. & Terminal Corp. v. N.Y. State Dep't of Transp.*, 715 N.E.2d 1050, 1053-54 (N.Y. 1999) (dismissing breach of contract claim). Contract formation requires a meeting of the minds between the parties on *all* material terms. *See, e.g., Bustamante v. Intuit, Inc.*, 45 Cal. Rptr. 3d 692, 704 (Cal. Ct. App. 2006) (stating that "failure to reach a meeting of the minds on all material points prevents the formation of a contract"); *Express Indus.*, 715 N.E.2d at 1053; *May v. Wilcox*, 582 N.Y.S.2d 294, 294 (N.Y. App. Div. 1992) (stating same and dismissing breach of contract claim).

Further, where there is no agreement on all material terms, there is no contract "even though the parties have orally agreed upon some of the terms, or have taken some action related to the contract." *Bustamante*, 45 Cal. Rptr. 3d at 704 (internal citations omitted). Material terms include the property for sale and price. *See, e.g., Joseph Martin, Jr., Delicatessen, Inc. v. Schumacher*, 417 N.E.2d 541, 543-44 (N.Y. 1981) (finding no contract formed). If the terms are unambiguous, the Court determines as a matter of law whether a binding contract was formed. *See Garcia*

*Marquez*, 942 F.2d at 626-27 (finding no contract formed); *Express Indus.*, 715 N.E.2d at 1053 (same).

No meeting of the minds occurred here, as the Complaint makes clear. DONE repeatedly alleges that it made an offer to buy two domain names: women.com and women.net. Compl. ¶¶ 12, 13. For example, the Complaint states that DONE's CEO "verbally offered $1,000,000 for both names and then later confirmed that offer via email." *Id.* at ¶ 12. Further, DONE claims that it purchased both domain names when its $1 million offer was accepted. *Id.* at ¶¶ 15, 18. For instance, the Complaint states: "As a result of his successful purchase of the domain names from defendants, plaintiff began acting as the owner of the domain names Women.com and Women.net." *Id.* at ¶ 15.

However, the alleged Agreement is equally clear that iVillage was willing to accept $1 million for women.com *only*. Compl. Ex. A. Sedo wrote to DONE: "Congratulations! The offer for *Women.com* has been accepted." *Id.* (emphasis added). Further, the subject line of all of the emails making up the alleged Agreement is "Women.com." *Id.* There is no mention of women.net *at all*. *Id.*

The statement that "[t]he offer for Women.com has been accepted" is unambiguous and should be understood based on its ordinary meaning – that iVillage was not agreeing to sell Women.net. *See, e.g., Beck*, 260 Cal. Rptr. at 242; *see also Express Indus.*, 715 N.E.2d at 1053. Thus, the Complaint and the incorporated documents show that the parties never reached an understanding on what property could be purchased for $1 million. *See Beck*, 260 Cal. Rptr. at 242 (interpreting documents attached to Complaint and dismissing contract claim based on such documents). For this reason, there was no meeting of the minds and no binding contract was formed.

Indeed, even if the Court were to accept DONE's claim that both domain names were for sale, which is contradicted by the documents DONE incorporates into the Complaint, the Complaint establishes that iVillage never accepted $1 million for both

names. Compl. Ex. A. Thus, at most, the Complaint demonstrates that iVillage altered a $1 million offer for both domain names and proposed a counteroffer of $1 million for women.com only. *Id.*

The law is clear that where an offer is substantially altered before acceptance, as it was here, it operates as a counteroffer and terminates the original offer. *E.g.*, *Marcus & Millichap Real Estate Inv. Brokerage Co. v. Hock Inv. Co.*, 80 Cal. Rptr. 2d 147, 150 (Cal. Ct. App. 1998) (finding no binding agreement); *Trade & Indus. Corp. (USA) v. Euro Brokers Inv. Corp.*, 635 N.Y.S.2d 227, 230 (N.Y. App. Div. 1995) (same). Because DONE does not allege that it accepted a counteroffer of $1 million for women.com alone and alleges only that it was willing to pay $1 million for both women.com and women.net, there was no meeting of the minds and thus no contract between the parties.

### C. Even If DONE Has Pleaded A Meeting Of The Minds, Which It Has Not, It Has Not Stated A Breach Of Contract Claim Because, At Most, The Parties Had An Agreement To Agree.

Further, even if the parties' communications could be interpreted to indicate agreement on the domain name(s) for sale, which they cannot, no contract was formed for the independent reason that the parties never executed a bill of sale. Sedo's email to DONE regarding its offer stated: "Here are the next steps: NBC/GE will be creating a Bill of Sale for this transaction. . . . What they will need from you is . . . : Name of your corporation; Legal Entity; Type of Corporation []; Official Address; Contact Information." Compl. Ex. A. Thus, Sedo expressly told DONE that the transaction could not be completed before the parties drafted, negotiated, and signed a bill of sale. *Id.*; *see also* Compl. ¶ 14.

Any provisional deal reached by the parties was therefore still vulnerable to falling apart during the negotiation of the bill of sale. Indeed, such negotiations undoubtedly would have revealed that the parties disagreed on the domain names for sale. NBCU was within its rights to require a bill of sale process, which would permit it, for instance, to run various compliance checks on the proposed purchaser of

women.com before committing to a sale. *See Schumacher*, 417 N.E.2d at 543 (stating liberty of contract "is no right at all if it is not accompanied by freedom not to contract"); *Jordan Panel Sys., Corp. v. Turner Constr. Co.*, 841 N.Y.S.2d 561, 568 (N.Y. App. Div. 2007) (stating "we think it preferable to allow sophisticated parties operating in the business world to decide when and how they wish to enter into legally enforceable contracts" and affirming dismissal of contract claim).

Thus, the Complaint and the attached documents demonstrate that, at best, the parties had an agreement to agree. Such an agreement is not enforceable as a matter of law. *See Beck*, 260 Cal. Rptr. at 241-42 (affirming dismissal of complaint because document attached to complaint showed parties merely had "'agreement to agree,' which cannot be the basis of a cause of action"); *Schumacher*, 417 N.E.2d. at 543 (same).

In short, the breach of contract claim fails because the parties never entered into a binding contract. The Court should dismiss the Complaint in its entirety.

## II.   IN THE ALTERNATIVE, THE COURT SHOULD TRANSFER THE ACTION TO THE SOUTHERN DISTRICT OF NEW YORK.

Should the Court not dismiss the Complaint, it may exercise its discretion under 28 U.S.C. §1404(a) to transfer this case to the United States District Court for the Southern District of New York, which is a far more convenient forum.

A court may transfer an action for the convenience of the parties and witnesses and in the interest of justice to any district where the action might have been brought initially. 28 U.S.C. §1404(a). The function of Section 1404(a) is "to prevent the waste of 'time, energy, and money' and to 'protect litigants, witnesses, and the public against unnecessary inconvenience and expense.'" *Van Dusen v. Barrack*, 376 U.S. 612, 616 (1964) (internal citations omitted); *see also Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 29-30 (1988) (court should undertake "flexible and individualized analysis" under 28 U.S.C. §1404(a)). Transfer is warranted if the Court concludes that the proposed alternative forum is more convenient than the present forum.

Gibson, Dunn & Crutcher LLP

8

*See Sparling v. Hoffman Constr. Co.*, 864 F.2d 635, 639 (9th Cir. 1988) (holding transfer was proper).

The NBC Defendants bear the burden of establishing that transfer is appropriate. *Saleh v. Titan, Corp.*, 361 F. Supp. 2d 1152, 1155 (S.D. Cal. 2005). The NBC Defendants have met this burden because transfer would avoid duplicative litigation, the majority of the parties and witnesses are on the East Coast, and New York law should govern the parties' dispute.

### A.   This Action Might Have Been Brought Initially In the Southern District of New York.

This is a diversity case. Therefore, it may have been brought in either: (1) a judicial district where any defendant resides, if all defendants are residents of the same state; or (2) in a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated. 28 U.S.C. §1391(a). Here, all defendants are either New York corporations or have their principal place of business in New York. In the alternative, a substantial part of the events giving rise to DONE's claims occurred in New York, including the engagement of the sales broker for the domain name(s) and the alleged acceptance of DONE's offer to buy the domain name(s). Thus, the Southern District of New York is a proper venue for this action.

### B.   The Convenience of Witnesses and Parties Strongly Favors Transfer to the Southern District of New York.

The convenience of the witnesses and litigants is often the most important factor in the analysis of a discretionary transfer. *Arete Power, Inc. v. Beacon Power Corp.*, No. C 07-5167 WDB, 2008 WL 508477, at *7 (N.D. Cal. Feb. 22, 2008). In balancing the convenience of witnesses, "courts must consider not only the number of witnesses, but also the nature and quality of their testimony." *Metz v. U.S. Life Ins. Co.*, 674 F. Supp. 2d 1141, 1147 (C.D. Cal. 2009) (noting that convenience of non-party witnesses is most important).

Here, the only connection to California is that DONE – which consists of one employee, Benjamin Padnos – is based in state. Every other relevant witness and piece of evidence is on the East Coast. *See, e.g.*, *Joe Boxer Corp. v. R. Siskind & Co.*, No. C 98-4899 SI, 1999 WL 429549, at *8-10 (N.D. Cal. June 8, 1999) (approving transfer to New York even though plaintiff business based in California where most relevant actions occurred in, and witnesses resided in, New York area).

The business executives at defendant iVillage (including John Curbishley, named in Paragraph 17 of the Complaint) who were the contacts for Sedo, as well as the relevant witnesses at NBCU, are based in New York City. These executives will be critical witnesses, as they will testify to the understanding between the NBC Defendants and Sedo, iVillage's broker. It would be burdensome for these New York-based executives to travel cross-country to testify at trial. Further, all NBCU witnesses would have to be deposed in New York.

Moreover, the non-party Sedo witnesses, including Jeffrey Gabriel, are in Massachusetts, which is much closer to New York than to California. The Sedo witnesses will provide critical testimony as to what Padnos communicated in the May 21 conference call, and what instructions iVillage provided about the domain name for sale and the requirements of the bill of sale process.

Because the vast majority of relevant witnesses are on the East Coast, this factor favors transfer.

**C.    Transfer Will Promote Judicial Economy By Avoiding Duplicative Litigation.**

The Court also should consider whether the proposed transfer will avoid duplicative litigation, effect judicial economy, and prevent waste of time and money. *See, e.g.*, *Van Dusen*, 376 U.S. at 616; *A.J. Indus., Inc. v. U.S. Dist. Court for Cent. Dist. of Cal.*, 503 F.2d 384, 389 (9th Cir. 1974) (noting positive effects transfer "might have in possible consolidation of discovery and convenience to witnesses and

Gibson, Dunn &
Crutcher LLP

10

1   parties"). Here, New York is the only venue that will allow all potential claims

2   against all relevant parties to be resolved in a single lawsuit.

3        The Complaint reveals that many issues in this litigation center on Sedo's

4   actions. The NBC Defendants will need to establish whether Sedo accurately

5   communicated with the parties and acted within the scope of the brokerage agreement.

6   Further, if the NBC Defendants are found liable to DONE, they would seek indemnity

7   from Sedo. All indemnity claims against Sedo would be based on the same set of facts

8   as this litigation, and therefore it would promote judicial economy to resolve all such

9   claims in a single lawsuit.

10        However, if the Court does not transfer this action, the NBC Defendants would

11   have to bring a duplicative lawsuit in New York to resolve any claims against Sedo.

12   The Professional Brokerage Agreement between Sedo and iVillage is referenced in the

13   Complaint and is attached as Exhibit 11 to DONE's pending Ex Parte Application for

14   a Temporary Restraining Order. It contains a forum selection clause requiring that

15   any claim shall be filed "only in the exclusive venue of New York County, New

16   York." Brokerage Agreement, ¶ 7.9.[2] This factor weighs strongly in favor of transfer

17   to New York, where all relevant claims between all parties could be heard in a single

18   action. *See Szegedy v. Keystone Food Prods., Inc.*, No. CV 08-5369 CAS (FFMx),

19   2009 WL 2767683, at *6 (C.D. Cal. Aug. 26, 2009) (permitting two cases involving

20   same issues to be "simultaneously pending in different District Courts leads to the

21   waste[] of time, energy and money that § 1404(a) was designed to prevent"); *Posven,*

22   *C.A. v. Liberty Mut. Ins. Co.*, 303 F. Supp. 2d 391, 406 (S.D.N.Y. 2004) ("[T]he

23   ability to implead a third-party in the proposed transferee forum and thereby resolve

24   related claims in a single action weighs heavily in favor of transfer.").

---

26   [2]    Moreover, Sedo consents to personal jurisdiction in New York in the Brokerage

27   Agreement, which will make it easier to compel the attendance of its witnesses

28   in a New York action (as opposed to California).

Gibson, Dunn &
Crutcher LLP

11

**D.**   **The Interests of Justice Favor Transfer.**

In deciding whether to transfer this case, the Court also should consider the factors governing *forum non conveniens* motions, although transfer under 1404(a) is analyzed more liberally than dismissal pursuant to *forum non conveniens*. *See, e.g.*, *Zeta-Jones v. Spice House*, 372 F. Supp. 2d 568, 575-76 (C.D. Cal. 2005) (applying *forum non conveniens* factors to §1404(a) motion and granting transfer). This inquiry involves balancing the preference accorded plaintiff's choice of forum with the burden of litigation in an inconvenient forum. *See id.*

The private interest factors, which involve "the convenience of the litigants," include: (1) ease of access to sources of proof in the two forums; (2) availability of compulsory process for witnesses; (3) ability to view the premises, if relevant; and, (4) any other practical problems. *See Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 241 & n.6 (1981). The public interest factors, which involve "the convenience of the forum," include: (1) docket congestion; (2) interests in resolving the conflict locally; (3) governing law, including avoiding conflict of law issues; and, (4) unfairness of burdening citizens in an unrelated forum with jury duty. *Id.* Here, the private and public interest factors strongly favor transfer to New York.

**1.**   **Private Interest Factors**

**a.**   **DONE's Choice of Forum Is Not Dispositive.**

Although the plaintiff's choice of forum is accorded significant weight, transfer is warranted if "the private and public interest factors clearly point toward trial in an alternative forum." *Piper Aircraft Co.*, 454 U.S. at 255. Further, courts give less deference to the plaintiff's selected forum if, *inter alia*, "the operative facts have not occurred within the forum." *See, e.g., Metz*, 674 F. Supp. 2d at 1146; *Hernandez v. Graebel Van Lines*, 761 F. Supp. 983, 990-91 (E.D.N.Y. 1991) (giving less significance to plaintiff's chosen forum where accident occurred in Florida, most witnesses were in Florida, and only connection to New York was plaintiff's residence

and medical treatment).  Here, the operative actions took place in New York, including iVillage's agreement with Sedo as well as its alleged acceptance of DONE's offer, and any performance would have occurred there.

A plaintiff's choice of forum is also given less weight when it is a company with the resources to litigate in either forum.  *See Gates Learjet Corp. v. Jensen*, 743 F.2d 1325, 1333 (9th Cir. 1984).  Here, given DONE's asserted readiness to expend millions of dollars to purchase and market the domain names at issue, it is fair to assume that DONE has sufficient resources to litigate in New York.  Thus, the Court should not give significant deference to DONE's forum choice.

> **b.**    **Ease of Access to Sources of Proof, Availability of Compulsory Process, and Other Practical Problems Favor Transfer.**

Most of the documents relevant to this case are in New York, all NBCU witnesses are in New York, and the Sedo nonparty witnesses are on the East Coast. Thus, the ease of access to sources of proof weighs in favor of transfer.

Further, the unavailability of compulsory process in this Court for the Sedo witnesses weighs in favor of transfer.  *See Zeta-Jones*, 372 F. Supp. 2d at 576; *see generally* Fed. R. Civ. P. 45(c)(3) (stating federal courts cannot require non-party witnesses to travel more than 100 miles for non-trial proceedings and should not require non-party witnesses to travel more than 100 miles for trial where witnesses will "incur substantial expense").  As discussed above, the Sedo witnesses, particularly Jeffrey Gabriel, will be critical to establishing the communications between Sedo and DONE, and between Sedo and iVillage.  Securing testimony from these witnesses in California will be time-consuming, costly, and possibly unsuccessful.  *See, e.g., Ironworkers Local Union No. 68 & Participating Employers Health & Welfare Fund v. Amgen*, No. CV 07-5157 PSG (AGRx), 2008 WL 312309, at *6-7 (C.D. Cal. Jan. 22, 2008) (finding in favor of transfer because many witnesses within reach of transferee court).  Because East Coast witnesses are more likely to be available to testify in New York, this factor favors transfer.

Finally, as discussed above, duplicative litigation may be necessary if the case is not transferred.  Thus, the private interests favor transfer.

### 2.   Public Interest Factors

#### a.   California Law Will Not Govern This Case.

Because New York substantive law applies to DONE's breach of contract claim, New York is the forum with the most familiarity with the governing law and the most interest in seeing that law applied correctly.  A diversity case should be litigated "in a forum that is at home with the state law that must govern the case." *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 509 (1947).

A federal court sitting in diversity must apply the choice-of-law rules of the forum state to determine the controlling substantive law.  *Fields v. Legacy Health Sys.*, 413 F.3d 943, 950 (9th Cir. 2005).  California choice-of-law rules mandate that a contract be interpreted under the law where the contract is to be performed, or if no place of performance is indicated, then under the law where the contract was made.  *See* Cal. Civ. Code § 1646; *see also Frontier Oil Corp. v. RLI Ins. Co.*, 63 Cal. Rptr. 3d 816, 830-36 (Cal. Ct. App. 2007) (holding that section 1646 is the California choice-of-law rule for disputes about contract interpretation).

Here, any alleged contract was made, and would have been performed, in New York.  Any contract was made in New York because, according to the Complaint, iVillage's New York-based employee John Curbishley accepted DONE's $1 million offer in New York.  *See* Compl. ¶¶ 13, 17; *Ledbetter Erection Corp. v. Workers' Comp. Appeals Bd.*, 203 Cal. Rptr. 396, 401 (Cal. Ct. App. 1984) (holding that contract was made in state where offeree uttered his acceptance over the phone).  Similarly, the contract would have been performed in New York because any payments by DONE would have been received in New York, and because the domain names belong to – and would have to be transferred by – defendants located in New York.  *See, e.g., ABF Capital Corp. v. Berglass*, 30 Cal. Rptr. 3d 588, 594 (Cal. Ct.

App. 2005). Thus, New York law governs the interpretation of any alleged contract, and this factor favors transfer.

### b.   Other Public Interest Factors Also Favor Transfer.

New York has a strong interest in adjudicating this dispute locally. The allegations arise primarily from actions that occurred in New York, affect companies that have their primary place of business in New York and/or are New York corporations, and DONE seeks to have domain names transferred away from New York defendants via injunction. DONE also alleges that the unlawful repudiation of the purported contract happened in New York. *See, e.g.*, *Saleh*, 361 F. Supp. 2d at 1167 (finding that district in which alleged conduct occurred "would have a strong interest" in action). For all of these reasons, it would be unfair to subject California residents to jury duty should this dispute go to trial. Finally, docket congestion is a neutral factor because both districts are very busy.

In short, the private and public interest factors strongly weigh in favor of transfer to the Southern District of New York.

## CONCLUSION

For all of the foregoing reasons, the Court should dismiss the Complaint in its entirety with prejudice or, alternatively, transfer this case under 28 U.S.C. § 1404(a), for the convenience of the witnesses and parties, to the Southern District of New York.

Dated: August 20, 2010

GIBSON, DUNN & CRUTCHER LLP
Scott A. Edelman
Michael H. Dore

By:   */s/ Scott Edelman*\*

Attorneys for Defendants General Electric Company; NBC Universal, Inc.; and iVillage, Inc.

Gibson, Dunn &
Crutcher LLP

15

1

2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

* I hereby attest that I have on file all holograph signatures for any signatures indicated by a "conformed" signature (/s/) within this efiled document.

Gibson, Dunn &
Crutcher LLP

16

## DECLARATION OF MICHAEL H. DORE RE MEET AND CONFER

I, Michael H. Dore, declare:

1.     I am an attorney duly licensed to practice before this Court. I am an attorney at Gibson, Dunn & Crutcher LLP, counsel of record for Defendants General Electric Company; NBC Universal, Inc.; and iVillage, Inc. (the "NBC Defendants") in this matter. The following facts are true of my own personal knowledge, except where stated on information and belief, and, if called as a witness, I could and would testify competently thereto.

2.     On August 11, 2010, I met with Steven Svajian, counsel for Plaintiff, at the law offices of Barrera & Associates, located at 1500 Rosecrans Avenue, Suite 500, Manhattan Beach, California, pursuant to the meet and confer requirements set forth in L.R. 7-3 and this Court's Initial Standing Order, paragraph 18(a).

3.     I discussed with Mr. Svajian (in person) the NBC Defendants' primary arguments raised in the concurrently filed motion that support the dismissal of Plaintiff's case or, in the alternative, the transfer of the case to the Southern District of New York. Mr. Svajian indicated that Plaintiff would oppose the NBC Defendants' motion and stated some of the bases for doing so. Mr. Svajian and I also discussed possible means to reach an accord between the parties and to eliminate the need for the NBC Defendants to bring their motion. This included the possible resolution of the case. Following these discussions, however, the parties have been unable to reach an agreement, and thus the NBC Defendants filed their motion.

4.     I declare under penalty of perjury of the laws of the United States of America that the foregoing is true and correct and that this declaration was executed on August 20, 2010 in Los Angeles, California.

_____
MICHAEL H. DORE

Gibson, Dunn &
Crutcher LLP

## CERTIFICATE OF SERVICE

I, Michael H. Dore, hereby certify that upon the electronic filing of the foregoing papers on August 20, 2010, pursuant to this Court's General Order 10-07 a notice of electronic filing will be automatically generated by the CM/ECF system and sent by email to the attorneys listed below.

Patricio T.D. Barrera

Stephen G. Svajian
Barrera & Associates
1500 Rosecrans Avenue, Suite 500
Manhattan Beach, CA 90266

Executed on August 20, 2010.

_____
Michael H. Dore

Gibson, Dunn &
Crutcher LLP

18