1  **BARRERA & ASSOCIATES**
   **PATRICIO T.D. BARRERA (SBN 149696)**
2  barrera@baattorneys.com
   **STEPHEN G. SVAJIAN (SBN 266581)**
3  ssvajian@gmail.com
   1500 Rosecrans Avenue, Suite 500
4  Manhattan Beach, California 90266
   Telephone:  310.802.1500
5  Telefax:    310.802.0500

6  Attorneys for Plaintiff Done! Ventures, LLC

7

8

9

10                    **UNITED STATES DISTRICT COURT**

11                    **CENTRAL DISTRICT OF CALIFORNIA**

12                         **WESTERN DIVISION**

13  DONE! VENTURES, LLC, a Delaware      )   Case No. 2:10-cv-04420-SJO-JC
    Limited Liability Company,           )
14                                       )
                   Plaintiff,            )   **PLAINTIFF'S**
15                                       )   **MEMORANDUM OF POINTS**
                   vs.                   )   **AND AUTHORITIES IN**
16                                       )   **SUPPORT OF OPPOSITION**
    GENERAL ELECTRIC COMPANY, a          )   **TO MOTION TO DISMISS**
17  New York Corporation; NBC            )
    UNIVERSAL, INC., a Delaware          )
18  Corporation; IVILLAGE, INC., a       )   Date:      October 12, 2010
    Delaware Corporation, and DOES 1     )   Time:      10:00 a.m.
19  through 10, inclusive,               )   Courtroom: 1
                                         )   The Honorable S. James Otero
20                 Defendants.           )
    _____  )
21

22

23

24

25

26

27

28

Plaintiff's Opposition to
Motion to Dismiss

# TABLE OF CONTENTS

I.    INTRODUCTION.................................................. 1

II.   STATEMENT OF FACTS......................................... 3

III.  ARGUMENT.................................................... 5

    A.   The Court Should Deny the NBC Defendant's 12(b)(6) Motion to Dismiss Because DONE!'s Complaint Adequately Pleads a Breach of Contract Claim................................... 5

        1.   Standards for Motions to Dismiss Based on Failure to State a Claim.................................... 5

        2.   There Was a "Meeting of the Minds," Because Defendants Accepted DONE!'s Counter-Offer of $1,000,000 for Both Women.com and Women.net. .................... 6

        3.   Defendants Incorrectly Argue that the Parties Merely Had an Agreement to Agree................................ 9

    B.   Defendants Have Failed to Meet Their Burden of Demonstrating That Transfer Under 28 U.S.C. § 1404(a) Is Warranted Here. ......... 10

        1.   The Legal Standard Governing Motions to Transfer under 28 U.S.C. § 1404. .......................... 10

        2.   The Plaintiff's Choice of Forum Is Entitled to Deference.... 11

        3.   The Convenience of The Parties and Their Relative Hardship Strongly Favors California.................... 11

        4.   The Convenience of the Witnesses. ................... 12

        5.   California Law Will Apply and California Has a Stronger Interest Than New York. .................... 13

            i.   The Contract Was Made in California and to be Performed in California........................ 13

            ii.  Other Factors. ............................... 13

BARRERA & ASSOCIATES
1500 Rosecrans Avenue
Suite 500
Manhattan Beach, CA 90266

Plaintiff's Opposition to
Motion to Dismiss                    -i-

6.   Ease of Access to Sources of Proof and Availability
     of Compulsory Process Favors This Court. . . . . . . . . . . . . . 14

7.   The Interests of Justice and Judicial Economy Favor
     Maintaining this Action in this Court  . . . . . . . . . . . . . . . . . 15

8.   Transfer Due to Duplicative Litigation is Premature
     and not Warranted. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

IV.   CONCLUSION. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

BARRERA & ASSOCIATES
1500 Rosecrans Avenue
Suite 500
Manhattan Beach, CA 90266

Plaintiff's Opposition to
Motion to Dismiss                    -ii-

**TABLE OF AUTHORITIES**

**FEDERAL CASES**

Allstar Marketing Group LLC v. Your Store Online LLC,

    2009 U.S. Dist. LEXIS 90994, *46 (CD. Cal. August 10, 2009).. . 10, 11, 12

Auster Oil & Gas, Inc. v. Stream,

    764 F.2d 381 (5th Cir. 1985). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

Beatie and Osborn LLP v. Patriot Scientific Corp.

    431 F.Supp.2d 367 (2006). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

Bell Atlantic Corp. v. Twombly,

    550 US 544, 127 S.Ct. 1955 (2007). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

Celotex Corp. v. Catrett,

    477 U.S. 317 (1986). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

Competitive Techs., Inc. v. Fujitsu Ltd.,

    333 F. Supp. 2d 858 (N.D. Cal. 2004). . . . . . . . . . . . . . . . . . . . . . . . . . . 13

Conley v. Gibson,

    355 U.S. 41 (1957). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

Decker Coal Co. v. Commonwealth Edison Co.,

    805 F.2d 834 (9th Cir. 1986). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

Doe v. United States,

    419 F.3d 1058 (9th Cir. 2005). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

Dwyer v. General Motors Corp.,

    853 F.Supp. 690 (S.D.N.Y., 1994). . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

Gilligan v. Jamco Dev. Corp.,

    108 F.3d 246 (9th Cir. 1997). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

Gulf Oil Corp. v. Gilbert,

    330 U.S. 501 (1947). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

Ileto v. Glock, Inc.,

    349 F.3d 1191 (9th Cir. 2003). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

BARRERA & ASSOCIATES
1500 Rosecrans Avenue
Suite 500
Manhattan Beach, CA 90266

Plaintiff's Opposition to
Motion to Dismiss
-iii-

Jenkins v. McKeithen,

    395 U.S. 411 (1969). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

Jones v. GNC Franchising, Inc.,

    211 F.3d 495 (9th Cir. 2000). . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

Lujan v. Nat'l Wildlife Fed.,

    497 U.S. 871 (1990). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

Mitsui Marine & Fire Ins. Co. v. Nankai Travel Int'l,

    245 F.Supp.2d 523 (S.D.N.Y.2003). . . . . . . . . . . . . . . . . . . . . . . . . 15

Posven, C.A. v. Liberty Mut. Ins., Co.,

    303 F.Supp.2d 391 (S.D.N.Y. 2004).. . . . . . . . . . . . . . . . . . . . . . . . 17

Royal & Sunalliance v. British Airways,

    167 F.Supp.2d 573 (S.D.N.Y.2001). . . . . . . . . . . . . . . . . . . . . . . . . 15

STX, Inc. v. Trik Stik, Inc.,

    708 F. Supp. 1551 (N.D. Cal. 1988). . . . . . . . . . . . . . . . . . . . . . . . . 11

Szegedy v. Keystone Food Prods., Inc.

    2009 WL 2767683.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

TM Claims Serv. v. KLM Royal Dutch Airlines,

    143 F.Supp.2d 402 (S.D.N.Y.2001). . . . . . . . . . . . . . . . . . . . . . . . . 15

U.S. v. Casey,

    420 F.Supp. 273 (D.C.Ga. 1976). . . . . . . . . . . . . . . . . . . . . . . . . . . 16

**STATE CASES**

Beatty v. Oakland Sheet Metal Supply Co.,

    111 Cal.App.2d 53 (1952).. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

Donovan v. RRL Corp.,

    26 Cal.4th 261 (2001). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

H.S. Crocker Co. v. McFaddin,

    148 Cal.App.2d 639 (1957). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

BARRERA & ASSOCIATES
1500 Rosecrans Avenue
Suite 500
Manhattan Beach, CA 90266

Plaintiff's Opposition to
Motion to Dismiss                          -iv-

Henderson v. Superior Court,

    77 Cal.App.3d 583 (1978)... . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

Louis Lesser Enterprises, Limited v. Roeder,

    209 Cal.App.2d 401 (1963). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

Pacific Hills Corp. v. Duggan,

    199 Cal.App.2d 806 (1962). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

Platt v. Union Packing Co.,

    32 Cal.App.2d 329 (1939)... . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

Toms v. Hellman,

    31 Cal.App. 74 (1931)... . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

**FEDERAL STATUTES**

28 U.S.C. § 1404. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

Fed. R. Civ. P. 1... . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

**STATE STATUTES**

Civ. Code, § 395. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

Civ. Code, § 1646. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

**OTHER AUTHORITIES**

5 Charles Alan Wright & Arthur R. Miller,

    Federal Practice and Procedure § 1216 (3d ed. 2004). . . . . . . . . . . . . . . . 5

Restatement, Conflict of Laws 2d... . . . . . . . . . . . . . . . . . . . . . . . . . . 13, 14

Williston on Contracts 41, § 22... . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

BARRERA & ASSOCIATES
1500 Rosecrans Avenue
Suite 500
Manhattan Beach, CA 90266

Plaintiff's Opposition to
Motion to Dismiss                    -v-

## I.    INTRODUCTION

The NBC defendants' gross distortion of the facts notwithstanding, this case is about the NBC defendants' refusal to perform on a valid contract with Plaintiff DONE! Ventures, LLC ("DONE!").

DONE! contracted with defendants through defendants' agent, Sedo.com, LLC, ("Sedo") to acquire the domain names Women.com and Women.net for $1,000,000.  Despite this simple and valid contract, defendants are now willing to adopt any version of the facts that will get them out of this DONE deal. Having removed the case to federal court, defendants' latest attempt to get out of a deal with DONE! is a motion to dismiss plaintiff's complaint.  Their Motion is based on the false premise that there was no contract because (1) there was no meeting of the minds, and (2) the parties merely agreed to agree.  There is no basis for defendants' arguments in either the law or the facts of this case.  In fact, defendants failed to provide any evidence to support a dismissal or a transfer. Accordingly, defendants' motion should be denied.

The NBC defendants' motion twists the facts to argue that defendants' acceptance was not an acceptance at all, but a counter-offer for Women.com *only*. (Def's Mem. at 6:12, 13) This argument is based on the language contained in the defendant's acceptance to DONE!'s offer of $1,000,000 for both names. The acceptance states, "Congratulations! The offer for Women.com has been accepted . . . " (Exh. 2) However, contrary to what is alleged in the motion to dismiss, the acceptance *did not* say that the acceptance was for Women.com *only*. (Exh. 2)

The evidence shows that the acceptance was an unequivocal assent to DONE!'s offer. First, it would be illogical for an offeror to congratulate an offeree only to respond with a counter-offer. Second, the parties referred to the domain names as "Women.com" throughout their dealings with the explicit understanding that the package included both the .com and .net domain names. (Padnos Decl. ¶6; Hack Decl. ¶9)  Third, Sedo, NBCU's agent, listed the domain name package as

Plaintiff's Opposition to
Motion to Dismiss                    -1-

"Women.com" on Sedo's web site. (Exh. 1) The headline listing read, "Women.com (WOMEN.COM) is for sale." (Id.) However, when a user clicked on the listing, the offer details read, "The acquisition of Women.com includes two domains: Women.com AND Women.net." (Id.) Sedo's email confirms that NBCU accepted DONE's offer for both Women.com **AND** Women.net. Fourth, the post-transaction communications confirm that the Agreement included both Women.com and Women.net. (Exh. 5)

The NBC defendants' argument that the parties merely had an agreement to agree because defendants did not sign a bill of sale attempts to add a layer of complexity to a simple transaction for domain names. (Defs.' Mem. at pp. 7:13 - 8:14) In the email that NBCU is now calling a counter-offer, NBCU's agent, Sedo and Jeff Gabriel stated, "Here are the next steps: NBC/GE will be creating a Bill of Sale for this transaction." (*Id*. at 7:18, 19) But, NBCU omits the next sentence in that email: ". . . We have used this process in the past, and it is nothing out of the ordinary." (Compl. ¶14; Exh. 2) Defendants' agent went on to say that all that was needed from DONE! was corporate information to complete the Bill of Sale. (Exh. 2) The Bill of Sale was obviously a mere formality, because there was nothing left to negotiate. The parties had agreed on the material terms of the deal. (See Hack Decl. ¶3) Under basic principles of contract formation law, the email confirms and memorializes an enforceable contract.

Finally, the NBC defendants' motion to transfer is premature and inaccurate. The crux of their argument is that it will be more efficient to litigate in New York, a district which has more than twice as many cases per judgeship and an average time to trial of more than a year longer than the Central District of California. (Exh. 3) A large part of their argument is predicated on their inability to bring in Sedo as a third party. (*See* Defs.' Mem. at pp. 10:23- 11:24) However, (1) Sedo is not a party to any suit with NBCU and (2) defendants have not shown that Sedo cannot participate in the present action in California.

BARRERA & ASSOCIATES
1500 Rosecrans Avenue
Suite 500
Manhattan Beach, CA 90266

Plaintiff's Opposition to
Motion to Dismiss                    -2-

The NBC defendants have not provided any supporting evidence.  This court is left to guess as to the identity and location of their witnesses.  DONE! on the other hand, has identified two non-party witnesses, both of whom reside in Arizona. It will be much more convenient for those witnesses to travel to neighboring California than New York.

For these reasons, the NBC defendants' motion should be denied.

## II.   STATEMENT OF FACTS

In January 2010, iVillage, Inc. entered into a brokerage agreement with Sedo.com, LLC ("Sedo") whereby Sedo would act as iVillage's exclusive agent in selling the domain names Women.com and Women.net. (Exh. 4) The brokerage agreement establishes that Sedo is to sell both Women.com *AND* Women.net. (Id.)

NBCU offered the domain names Women.com and Women.net for sale through Sedo's web site. (Exh. 1) The website listing read, "Women.com (WOMEN.COM) is for sale." However, the deal detail page made clear that the offer was for Women.com AND Women.net: "The acquisition of Women.com includes the two domains: Women.com *AND* Women.net. Please contact Jeffrey Gabriel directly . . . with any questions regarding this domain or to present a confidential offer for these highly premium domains." (Id.)

On May 20, Jeff Gabriel, from Sedo, LLC called Alan Hack of Names Plus Marketing. (Hack Decl. ¶4) Hack's declaration states that Gabriel informed Hack that Sedo had been retained to act as NBC Universal's agent to sell the Women.com domain name package and that he was looking for an individual or business to buy both Women.com and Women.net. Hack states that during that conversation they discussed the package, which included both Women.com and Women.net, but that they referred to the package collectively as "Women.com." (Id.)

On May 20, 2010, Ben Padnos, DONE!'s CEO, was contacted by Hack and informed that the domain names Women.com and Women.net were for sale.

BARRERA & ASSOCIATES
1500 Rosecrans Avenue
Suite 500
Manhattan Beach, CA 90266

Plaintiff's Opposition to
Motion to Dismiss                -3-

(Padnos Decl. ¶3)

On May 21, Padnos, Gabriel, and Hack discussed the deal via teleconference. (Padnos Decl. ¶4) During the call, the parties discussed both domain names and it was accepted that the deal included two domain names. (Id.) Padnos made an offer for the domain name package. (Id.) Later that day he sent NBC the following confirmation of his offer for the domain names Women.com and Women.net: "This email confirms my offer of $1MM valid until 5pm on Monday, May 24, 2010." (Exh. 2)

Gabriel sent Padnos a confirmation that he had received the offer, "Ben, It was nice speaking with you today. I am confirming that I have received the offer. Question: Payment will be made in one payment, correct?" (Exh. 2) Within a few hours, Padnos replied, "Correct - one wire transfer payment." (Id.)

NBCU accepted DONE!'s offer prior to its expiration at 5pm on Monday, May 24, 2010 through its agent Gabriel. "Alan and Ben, Congratulations! The offer for Women.com has been accepted!" (Compl. ¶14; Exh. 2)

On May 27, 2010, Padnos was contacted by Gabriel and was told that, Jeff Zucker has overruled the transaction and that the deal was off. (Padnos Decl. ¶6) Gabriel confirmed Sedo had sold domains for NBC Universal in the past and that "this was the first time this type of thing had ever happened." (Compl. ¶16) In response, DONE! filed this lawsuit on June 3, 2010, seeking specific performance.

After DONE! filed suit, NBCU first changed the domain name system settings, thereby injuring the names, and then changed the domain name system settings again to point to iVillage, which allowed NBCU to usurp traffic generated by the names for their own use. (*See* Plaintiff's Memorandum of Points and Authorities in Support of Application for a Temporary Restraining Order and Order to Show Cause Re: Preliminary Injunction 5:14 - 6:28). DONE! then filed a TRO to protect the domain names.  Plaintiff's TRO application has been fully briefed.  The Court has not ruled on plaintiff's pending TRO application.

Plaintiff's Opposition to
Motion to Dismiss                    -4-

## III.    ARGUMENT

### A.    The Court Should Deny the NBC Defendant's 12(b)(6) Motion to Dismiss Because DONE!'s Complaint Adequately Pleads a Breach of Contract Claim

#### 1.    Standards for Motions to Dismiss Based on Failure to State a Claim

Motions to dismiss are disfavored, as there exists "'a powerful presumption against rejecting pleadings for failure to state a claim.'" *Gilligan v. Jamco Dev. Corp.*, 108 F.3d 246, 249 (9th Cir. 1997) (quoting *Auster Oil & Gas, Inc. v. Stream*, 764 F.2d 381, 386 (5th Cir. 1985)). "[A] complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957). In considering a motion to dismiss, a district court must take as true all well-pleaded allegations of material fact and must construe them in the light most favorable to the plaintiff. *Ileto v. Glock, Inc.*, 349 F.3d 1191, 1200 (9th Cir. 2003). A court also must take into account all inferences supporting the complaint that a trier of fact reasonably could draw from the evidence. *Id.*

"For purposes of a motion to dismiss, the plaintiff's allegations are taken as true, and the Court must construe the complaint in the light most favorable to the plaintiff." *Jenkins v. McKeithen*, 395 U.S. 411, 421 (1969). To defeat such a motion, the factual allegations must simply be "enough to raise a right to relief above the speculative level…on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Bell Atlantic Corp. v. Twombly*, 550 US 544, 127 S.Ct. 1955, 1965 (2007) (quoting 5 Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1216 (3d ed. 2004)). Further, the court must draw all reasonable inferences in the plaintiff's favor, *Doe v. United States*, 419 F.3d 1058, 1062 (9th Cir. 2005), and presume that general allegations

BARRERA & ASSOCIATES
1500 Rosecrans Avenue
Suite 500
Manhattan Beach, CA 90266

Plaintiff's Opposition to
Motion to Dismiss                                    -5-

1   embrace those specific facts that are necessary to support the claim," *Lujan v. Nat'l*

2   *Wildlife Fed.*, 497 U.S. 871, 889 (1990). Thus, factual disputes are properly

3   resolved only on summary judgment or at trial, not on a motion to dismiss. *Celotex*

4   *Corp. v. Catrett*, 477 U.S. 317, 327 (1986).

5          2.      There Was a "Meeting of the Minds," Because Defendants

6                  Accepted DONE!'s Counter-Offer of $1,000,000 for Both

7                  Women.com and Women.net

8          There was a meeting of the minds between the parties because there was a

9   valid offer and an unequivocal acceptance of that offer. The NBC defendants

10  incorrectly argue that defendants never accepted DONE! offer of $1,000,000 for

11  both Women.com and Women.net. (Defs.' Mem. at 6:12-13) Defendants argue that

12  plaintiff offered $1,000,000 for Women.com and Women.net and that Jeff

13  Gabriel's email, stating, "Congratulations! The offer for Women.com has been

14  accepted! . . ." was merely a counter-offer for Women.com *only*. (Id. at 7:1-3) This

15  is just plain wrong.

16         A contract is made by meeting of parties' minds through medium of offer

17  and acceptance. *Donovan v. RRL Corp.*, 26 Cal.4th 261, 270 (2001). "Mutual

18  assent usually is manifested by an offer communicated to the offeree and an

19  acceptance communicated to the offeror." *Id* at 270.

20         Defendants offered the domain names Women.com and Women.net for sale

21  through Sedo's web site as Women.com. (Exh. 1) The website listing read,

22  "Women.com (WOMEN.COM) is for sale." (Id.)  It is critical to note that the deal

23  detail page confirmed that the offer was for Women.com *AND* Women.net: "The

24  acquisition of Women.com includes the two domains: Women.com AND

25  Women.net. Please contact Jeffrey Gabriel directly . . . with any questions

26  regarding this domain or to present a confidential offer for these highly premium

27  domains." (Id.) Thus, defendants' initial marketing statement represented that

28  Women.com was for sale, but the details on the deal clarified and confirmed that

BARRERA & ASSOCIATES
1500 Rosecrans Avenue
Suite 500
Manhattan Beach, CA 90266

Plaintiff's Opposition to
Motion to Dismiss                    -6-

by purchasing Women.com a buyer would also receive Women.net. (Id.)  By analogy, a real estate broker may market a picture of a home on the Internet as being for sale but the detail page includes a reference to the home, a garage, and a yard.  The real estate buyer is purchasing the entire package, not just the home in the picture.  Here, defendants' detail page made clear that something more then Women.com was included: two domain names were part of the offer.

Throughout the course of the transaction the parties referred to Women.com and Women.net (the domain name "package") as Women.com only, for sake of convenience and as part of industry jargon.  (Padnos Decl. ¶4; Hack Decl. ¶9)  The brokers in the transaction knew the transaction included both Women.com and Women.net. (Hack Decl. ¶4; Exh. 5)  Defendants intended to sell both Women.com and Women.net as a package.  There is no evidence to suggest otherwise.

On May 21, Padnos, Gabriel, and Hack discussed the deal via teleconference. Padnos made an offer for the domain name package. Hack's declaration states that the parties discussed both names and that it was understood that Padnos' offer included both domain names. (Hack Decl. ¶9) The parties referred to the names as Women.com, but understood and discussed the bundled package. (Padnos Decl. ¶4; Hack Decl. ¶9)

The declarations of Hack and Padnos both state that all parties understood Sedo's acceptance email to mean that Sedo, as NBCU's agent, accepted the offer for both Women.com and Women.net.  Sedo's email confirmed that defendants accepted DONE!'s offer for both Women.com and Women.net.

The cardinal rule in the construction of contracts is that the mutual intention of the parties as exhibited by their language, acts, and conduct, shall govern. *H.S. Crocker Co. v. McFaddin*, 148 Cal.App.2d 639, 643 (1957); Williston on Contracts 41, § 22. "It is the objective thing, manifestation of mutual consent, which is essential." *McFaddin* at 643. In contract interpretation, the law imputes to

Plaintiff's Opposition to
Motion to Dismiss                    -7-

a person the intention corresponding to the reasonable meaning of his language, acts, and conduct. *Platt v. Union Packing Co.*, 32 Cal.App.2d 329, 336 (1939).

It is unmistakable through Gabriel's conduct and words that he unequivocally accepted DONE!'s offer on behalf of the seller, defendants.  Gabriel stated, " . . . Congratulations! The offer for Women.com has been accepted! Here are the next steps: NBC/GE will be creating a Bill of Sale for this transaction. We have used this process in the past, and it is nothing out of the ordinary. . . ." (Exh. 2) It was not necessary for Gabriel to state that the offer for **both** Women.com and Women.net has been accepted. All that is needed for a valid acceptance is an unequivocal assent to the offer. *Beatty v. Oakland Sheet Metal Supply Co.*, 111 Cal.App.2d 53, 61, 62 (1952). Further, it is not essential that identical language be repeated. *Id* at 62. Instead, "Any form of expression showing clearly an intention to accept on terms proposed, that is a consent to same subject matter in same sense, is sufficient . . . [to] constitute acceptance." *Id* at 62.

Indeed, Gabriel's email shows that defendants intended to accept DONE!'s offer. His language and conduct in no way indicate that he is making a counter-offer. First he congratulates Padnos on the offer being accepted. It would be illogical for a party to congratulate a party on their offer being accepted and then proceed with a counter-offer. Congratulations were being extended for closing the deal.  In baseball, as in the negotiations of contracts, congratulations are extended after the last out of the game and when the deal is done.  Until the game is over, there is nothing to congratulate.  Here, the negotiations were over. *The deal was done.*  Then, after Gabriel congratulates Padnos on plaintiff's offer being accepted, Gabriel states, "NBC/GE will be creating a Bill of Sale for this transaction." (Exh. 2) Thus, there was nothing left to negotiate. DONE!'s offer had been accepted. This was not a counter-offer.

There was a meeting of the minds here, as adequately pleaded in the Complaint. Defendants' argument that there was no "meeting of the minds" fails

BARRERA & ASSOCIATES
1500 Rosecrans Avenue
Suite 500
Manhattan Beach, CA 90266

Plaintiff's Opposition to
Motion to Dismiss                    -8-

and the Court should deny this motion to dismiss.

3.   <u>Defendants Incorrectly Argue that the Parties Merely Had an Agreement to Agree</u>

The NBC defendants incorrectly argue that a bill of sale agreement was necessary for the parties to have a binding contract. (Defs.' Mem. at 7:13-8:14)

Preliminary negotiations ordinarily result in a binding contract when all of the terms are definitely understood, even though the parties intend to later execute a formal writing. *Louis Lesser Enterprises, Limited v. Roeder*, 209 Cal.App.2d 401, 404, 405 (1963). "Where minds of parties have met respecting more formal writing to be executed, and agreed terms are certain, obligatory contract exists, dating from making of earlier agreement." *Toms v. Hellman*, 31 Cal.App. 74, 77 (1931).

The bill of sale agreement was a mere formality. Sedo stated in the same acceptance email to DONE!, "Here are the next steps: NBC/GE will be creating a Bill of Sale for this transaction. We have used this process in the past, and it is nothing out of the ordinary. . . ." (Exh. 2) Gabriel's language, that the bill of sale "is nothing out of the ordinary" shows that there was nothing left to negotiate.

DONE! was paying $1,000,000 for the domain names Women.com and Women.net.  In return the NBC defendants would give DONE! title to the names and transfer them through Sedo to DONE!. Gabriel even clarified the manner of payment - "one wire transfer." (Exh. 2) All Sedo needed from DONE! was processing information: name of the company, legal entity, type of corporation, official address, and contact information. (Exh. 2) Once Sedo had that information, they would have everything they needed to send DONE! an invoice for the purchase of Women.com and Women.net. (Id.) The communication from Sedo shows that all the material terms had been agreed upon.

Alan Hack, who has been involved in the domain name industry for eleven years and has been a part of hundreds of domain name transactions, states the

BARRERA & ASSOCIATES
1500 Rosecrans Avenue
Suite 500
Manhattan Beach, CA 90266

Plaintiff's Opposition to
Motion to Dismiss                    -9-

following in his declaration: "[D]omain name transactions are relatively straightforward. The key terms include the domains for sale and the price the parties are willing to pay for the domains." (Hack Decl. ¶3) Thus, the terms of the bill of sale were unessential and the contract should be enforced. (See *Pacific Hills Corp. v. Duggan*, 199 Cal.App.2d 806, 809 (1962), holding that, "Where matters left for future agreement are unessential, each party will be forced to accept a reasonable determination of unsettled point or if possible the unsettled point may be left unperformed and remainder of contract be enforced.")

All material terms were agreed upon and there is an enforceable contract between defendants and DONE!.  The NBC defendant's motion to dismiss based on an unenforceable agreement to agree is false and should be denied.

**B.      Defendants Have Failed to Meet Their Burden of Demonstrating That Transfer Under 28 U.S.C. § 1404(a) Is Warranted Here**

        1.      The Legal Standard Governing Motions to Transfer under 28 U.S.C. § 1404

In deciding a motion to transfer venue, the court must weigh multiple factors, including (1) the plaintiff's choice of forum; (2) the convenience of the parties; (3) the convenience of the witnesses; (4) the location of books and records; (5) which forum's law applies; (6) the interests of justice; and (7) administrative considerations. *Allstar Marketing Group LLC v. Your Store Online LLC*, 2009 U.S. Dist. LEXIS 90994, *46 (CD. Cal. August 10, 2009). The Ninth Circuit has also "suggest[ed] that the following factors may be relevant" in assessing a motion to transfer venue: (1) the location where the relevant agreements were negotiated and executed, (2) the state that is most familiar with the governing law, (3) the plaintiff's choice of forum, (4) the respective parties' contacts with the forum, (5) the contacts relating to the plaintiff's cause of action in the chosen forum, (6) the differences in the costs of litigation in the two forums, (7) the availability of compulsory process to compel attendance of unwilling

BARRERA & ASSOCIATES
1500 Rosecrans Avenue
Suite 500
Manhattan Beach, CA 90266

Plaintiff's Opposition to
Motion to Dismiss                    -10-

non-party witnesses, and (8) the ease of access to sources of proof. *Id.* at 47 (quoting, *Jones v. GNC Franchising, Inc.*, 211 F.3d 495, 498-99 (9th Cir. 2000)).

### 2.   The Plaintiff's Choice of Forum Is Entitled to Deference

Plaintiff's choice of venue is entitled to deference and should not be easily overturned. *STX, Inc. v. Trik Stik, Inc.*, 708 F. Supp. 1551, 1555-56 (N.D. Cal. 1988). As a result, the moving party "bears a heavy burden of proof to justify the necessity of the transfer." *Id.* Transfer should not be ordered if transfer would merely "shift the inconvenience" from one party to another. *Allstar*, 2009 U.S. Dist. LEXIS at 48.  Where a transfer would merely shift rather than eliminate inconvenience, a transfer motion should be denied. *See*, *Decker Coal Co. v. Commonwealth Edison Co.*, 805 F.2d 834, 843 (9th Cir. 1986). The moving party therefore bears the burden of showing that the balance of the transfer factors strongly weighs in its favor such that a transfer is warranted. *Id*. (emphasis in the original).

DONE! filed this action in the County of Los Angeles, within the Central District of California, and thus continuing the action in the present venue should be given deference.

### 3.   The Convenience of The Parties and Their Relative Hardship Strongly Favors California

A court may consider the relative means of the parties in deciding a transfer motion. *Dwyer v. General Motors Corp.*, 853 F.Supp. 690, 693 (S.D.N.Y., 1994). As defendants point out, DONE! is a one-person company. (Defs.' Mem. at 9:1-2) The NBC defendants on the other hand are part of a giant organization with major operations and thousands of employees working for defendants in Los Angeles County California.

Because DONE! is a small business, it would be much more difficult for DONE! to litigate this case in New York than it would be for defendants to litigate this case in California. DONE!'s business depends on Padnos being located in

BARRERA & ASSOCIATES
1500 Rosecrans Avenue
Suite 500
Manhattan Beach, CA 90266

Plaintiff's Opposition to
Motion to Dismiss                        -11-

California and requiring him to travel for the purpose of litigation would greatly disrupt his business. (Padnos Decl. ¶10) Defendants on the other hand have a large organizational chain with multiple redundancies built in that would accommodate for missing executives, which would ensure that its business does not falter.

Defendants point out that depositions would need to take place in New York. This is factually inaccurate, as depositions can take place anywhere via video conference, and the key witnesses are located outside of New York in Arizona, California, and Massachusetts.

Any transfer of this action would at most merely shift the inconvenience from one party to another or third parties. This factor favors not transferring this action.

### 4.   The Convenience of the Witnesses

The convenience of third-party witnesses is often the most important factor in determining whether a transfer under § 1404 is appropriate. *Allstar*, 2009 U.S. Dist. LEXIS at 52 (noting the same, but holding that since neither party identified any non-party witnesses, this normally important factor added little to that court's analysis in that case).

Whereas defendants have not identified a single non-party witness, DONE! has identified two witnesses, Andy Ball and Alan Hack. Both witnesses live in Arizona. (Hack Decl., ¶1; Ball Decl., ¶1)(Andy Ball's declaration is attached as a supporting exhibit to Done!'s pending TRO application).  It would be much more convenient for those witnesses to travel to Los Angeles, than New York.

Interestingly, the NBC defendants attempt to use Sedo as both a non-party witness and a potential party necessitating transfer to New York due to a forum selection clause. (Defs.' Mem. at 11:10-16) Because defendants name their agent, Sedo as a potential party, defendants have completely failed to identify any non-party witnesses.  If NBCU's strategy is to surprise this Court and DONE! with an assortment of new non-party witnesses in defendants' reply brief, defendants

BARRERA & ASSOCIATES
1500 Rosecrans Avenue
Suite 500
Manhattan Beach, CA 90266

Plaintiff's Opposition to
Motion to Dismiss                    -12-

should not be allowed to do so since reply briefs are only for responding to new issues raised for the first time in the opposition papers. *Competitive Techs., Inc. v. Fujitsu Ltd.*, 333 F. Supp. 2d 858, 862-63 (N.D. Cal. 2004) (noting that courts generally decline to consider arguments raised for the first time in a reply brief, for to do so would deprive opposing party adequate opportunity to respond). This most important factor weighs very heavily in favor of not transferring this action.

5.   California Law Will Apply and California Has a Stronger Interest Than New York

### i.   The Contract Was Made in California and to be Performed in California

In California, a contract is to be governed by the law and usage of the place where it is to be performed, or, if the place of performance is not indicated, by the law and usage of the place where it is made; *Henderson v. Superior Court*, 77 Cal.App.3d 583, 592-93 (1978); Cal. Civ. Code, § 1646.

The contract was made in California.  Performance of the contract would have taken place in Manhattan Beach, California. DONE!'s CEO was located in California when this matter took place. (Padnos Decl. ¶12) He was contracting to buy a domain name to build a business in California. (Id.) DONE! would have made payments from California and would have hosted the domain names on a server in California. (Id.)  Thus, jurisdiction and venue are proper in California. California Code of Civil Procedure §395.

### ii.   Other Factors

In addition to the fact that performance was to take place in California, other factors noted in the Restatement, Conflict of Laws 2d suggest that California law should apply: "When the application of that rule is obscure, California court should be guided by the factors set out in the Restatement, Conflict of Laws 2d." *Henderson v. Superior Court*, 77 Cal.App.3d 583, 592-93 (1978); Cal. Civ. Code, § 1646. The relevant portion of the restatement is the following:

BARRERA & ASSOCIATES
1500 Rosecrans Avenue
Suite 500
Manhattan Beach, CA 90266

Plaintiff's Opposition to
Motion to Dismiss                                 -13-

(2) In the absence of an effective choice of law by the parties, the contacts to be taken into account in applying the principles of § 6 to determine the law applicable to an issue include:

(a) the place of contracting,

(b) the place of negotiation of the contract,

(c) the place of performance,

(d) the location of the subject matter of the contract, and

(e) the domicil, residence, nationality, place of incorporation and place of business of the parties. RESTATEMENT (SECOND) CONFLICT OF LAWS § 188 (1996).

These factors are then evaluated according to their relative importance with respect to the particular issue. Rest. 2d Conf. of Laws, § 188. Indeed, the important activities in this situation took place in Manhattan Beach. The contract was made in Manhattan Beach between Sedo's agent, Jeff Gabriel, and DONE! via email.  The NBC defendants may argue, at best, that the place of the contracting and the place of the negotiation of the contract was Manhattan Beach, California, or Boston, Massachusetts. However, the parties had minimal contact with New York when they contracted and thus the forum should not be New York.

Because California law will apply, California is the forum with the most familiarity with the governing law and the most interest in seeing that law applied correctly. A diversity case should be litigated, "in a forum that is at home with the state law that must govern the case." *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 509 (1947). Further, California has a substantial interest in protecting its residents' expectations regarding contractual obligations with out-of-state residents.

      6.    Ease of Access to Sources of Proof and Availability of Compulsory Process Favors This Court

The relevant documents in this case are attached to the Complaint or to

BARRERA & ASSOCIATES
1500 Rosecrans Avenue
Suite 500
Manhattan Beach, CA 90266

Plaintiff's Opposition to
Motion to Dismiss
-14-

Plaintiff's Request for a TRO. Nevertheless, as to this factor, the moving party must establish the location and importance of the documents in question. *Beatie and Osborn LLP v. Patriot Scientific Corp.*, 431 F.Supp.2d 367, 397 (2006). NBCU's Motion merely states that "all documents relevant to this case are in New York." (Defs.' Mem. at 13:11-14) They do not establish the location and importance of any documents.  There is no evidence to support defendants' statement.  Defendants have not identified the witnesses or documents which they claim are in New York.

Further, access to sources of proof is not a particularly challenging issue in today's high-tech world. Regardless of where the litigation is held, most documents will be disclosed in the parties' disclosures or produced in response to written document requests.

Finally, the NBC defendants argue that Sedo cannot be compelled to testify in California because Sedo's main office is located more than 100 miles away. (Defs.' Mem. at 13:15-20) Sedo is in Boston. Boston is almost 200 miles from New York. Thus, Sedo cannot be compelled to New York either.  This factor should not weigh in favor of the NBC defendants.

### 7.   The Interests of Justice and Judicial Economy Favor Maintaining this Action in this Court

The Court's consideration of whether transfer is in the interest of justice is "based on the totality of the circumstances," *Mitsui Marine & Fire Ins. Co. v. Nankai Travel Int'l*, 245 F.Supp.2d 523, 527 (S.D.N.Y.2003) (quoting *TM Claims Serv. v. KLM Royal Dutch Airlines*, 143 F.Supp.2d 402, 407 (S.D.N.Y.2001)), and "relates primarily to issues of judicial economy," id. (citing *Royal & Sunalliance v. British Airways*, 167 F.Supp.2d 573, 578 (S.D.N.Y.2001)).

The interests of judicial economy strongly favor proceeding in the Central District of California. While this Court is busy, the Southern District of New York is busier. The number of pending cases per judgeship in the Southern District of

BARRERA & ASSOCIATES
1500 Rosecrans Avenue
Suite 500
Manhattan Beach, CA 90266

Plaintiff's Opposition to
Motion to Dismiss                    -15-

New York is more than twice the number of pending cases per judgeship in the Central District of California (439 for the Central District of California and 937 for the Southern District of New York in 2009). Exh. 3.

More importantly, the speed with which cases proceed to trial greatly favors this Court: In the Central District of California, the median time from filing to trial was 19 months in 2009; whereas in the Southern District of New York, this median time was 31.4 months in 2009. (Id.) This is a difference of more than 65%. A plaintiff can expect his case to take more than a year longer on average to get to trial in the Southern District of New York. (Id.) For this reason, therefore, it should be sufficient reason on its own to justify permitting DONE! to proceed with its action before this Court since a speedy determination is central to Rule 1 of the Federal Rules of Civil Procedure:

> These rules govern the procedure in all civil actions and proceedings in the United States district courts, except as stated in Rule 81. They should be construed and administered to secure the just, speedy, and inexpensive determination of every action and proceeding. Fed. R. Civ. P. 1.

    8.   <u>Transfer Due to Duplicative Litigation is Premature and not Warranted</u>

There is no duplicative litigation as Sedo is not a party to this suit. The ability of a defendant to join third parties in the transferee district "is an important although not conclusive consideration in favor of the party seeking transfer that third parties cannot be joined in the pending action in the transferring forum." *U.S. v. Casey*, 420 F.Supp. 273, 277 (D.C.Ga. 1976). Thus, it is necessary that the parties ***cannot*** be joined for the inefficiency of duplicative litigation to even be a consideration. *Id*.

Plaintiff cites two cases to support its argument that transfer of venue is in

BARRERA & ASSOCIATES
1500 Rosecrans Avenue
Suite 500
Manhattan Beach, CA 90266

Plaintiff's Opposition to
Motion to Dismiss
-16-

the interest of justice due to duplicity of suit: (1) *Szegedy v. Keystone Food Prods., Inc.* 2009 WL 2767683 and (2) *Posven, C.A. v. Liberty Mut. Ins., Co.*, 303 F.Supp.2d 391, 406 (S.D.N.Y. 2004). (Defs.' Mem. at 11:18-24) However, in both cases parties had filed a third-party complaint.  The NBC defendants have not brought an action against their agent, Sedo, nor should they.  If the NBC defendants anticipate a future dispute concerning the brokerage agreement, that dispute is not part of this action for specific performance and breach of contract.

Further, the cases cited by defendants in which courts have transferred venue due to judicial efficiency and multiplicity of suits in different venues have a common characteristic in motion to transfer cases - the party seeking transfer *cannot* bring suit against the party in the venue from which they are seeking transfer because they are not able to establish personal jurisdiction over the third-party. *See e.g. Posven*, at 408, (Stating that "The ability to obtain personal jurisdiction over [a third-party] therefore, remains an important consideration for the Court in determining whether to transfer venue."). Defendants have not shown that they could not bring suit against Sedo in this venue. Defendants merely state that they may have to file suit against Sedo.  Defendants have not demonstrated that defendants would not be able to pursue a claim against Sedo in the Central District of California.

Forum selection clauses are an important factor in making a decision to transfer a case when there is a forum selection clause in the contract the parties are suing over. However, this is not the case here.  The NBC defendants and DONE! did not have a forum selection clause in their agreement.  The NBC defendants are requesting the Court to give weight to a forum selection clause the NBC defendants may have in a separate agreement with their agent. Any contract between Sedo and the NBC defendants is not the subject matter of this action. At best, the issues between defendants and Sedo pertain to indemnity, and can be resolved in the future.  Therefore, any forum selection clause the NBC defendants

BARRERA & ASSOCIATES
1500 Rosecrans Avenue
Suite 500
Manhattan Beach, CA 90266

Plaintiff's Opposition to
Motion to Dismiss                    -17-

may have with Sedo should be given no weight in whether the Court should transfer this action.

## IV.   CONCLUSION

The NBC defendants' motion to dismiss should be denied because the parties have a valid contract.  Similarly, the NBC defendants' motion to transfer should be denied.  A vast majority of the §1404 factors weigh significantly in favor of maintaining this action before this Court. DONE! therefore requests that this Court deny the NBC defendants' motion, in its entirety.


Dated: September 20, 2010          BARRERA & ASSOCIATES



By:   _/s/ Patricio T.D. Barrera_____
Patricio T.D. Barrera
Attorneys for Plaintiff DONE! Ventures, LLC

Plaintiff's Opposition to
Motion to Dismiss                      -18-