GIBSON, DUNN & CRUTCHER LLP
SCOTT EDELMAN, SBN 116927
sedelman@gibsondunn.com
JESSICA L. LUND, SBN 262322
jlund@gibsondunn.com
2029 Century Park East, Suite 4000
Los Angeles, California 90067-3026
Telephone: (310) 552-8500
Facsimile: (310) 551-8741

Attorneys for Defendants
General Electric Company;
NBC Universal, Inc.; and iVillage, Inc.

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

WESTERN (SPRING) DIVISION

| | |
|---|---|
| DONE! VENTURES, LLC, a Delaware Limited Liability Company,<br><br>Plaintiff,<br><br>vs.<br><br>GENERAL ELECTRIC COMPANY, a New York Corporation; NBC UNIVERSAL, INC., a Delaware Corporation; and IVILLAGE, INC., a Delaware Corporation, and DOES 1 through 10, inclusive,<br><br>Defendants. | CASE NO. CV10-04420-SJO(JCx)<br><br>**DEFENDANTS' REPLY IN SUPPORT OF MOTION TO DISMISS PLAINTIFF'S COMPLAINT, AND, ALTERNATIVELY, TO TRANSFER VENUE**<br><br>Date:           October 12, 2010<br>Time:           10:00 a.m.<br>Courtroom:   1<br><br>The Honorable S. James Otero |

## INTRODUCTION

DONE has jumped the gun and seeks to impose a contract even though the parties never finalized their negotiations about the potential sale of a domain name. Because the Complaint makes clear on its face that DONE has failed to state a binding contract, DONE now seeks to rely on documents outside the pleadings in an attempt to avoid dismissal of its claim. All of these documents are irrelevant, and the Court should not consider them. The Court should evaluate the parties' alleged Agreement based on its four corners, not on DONE's new testimony about what it "really meant" and how it "understood" the parties' clear, written words.

Alternatively, should the Court decide not to dismiss the Complaint, it should transfer the case to the Southern District of New York.

## ARGUMENT

### I.  THERE IS NO ENFORCEABLE CONTRACT

The Complaint makes clear that no binding contract was formed because there was no meeting of the minds on the property for sale, and because the parties never completed the bill of sale process required by the NBC Defendants.

DONE alleges that it made a $1 million offer for two domain names: women.com and women.net. Compl. ¶ 12. Yet, the document that it points to as the parties' "Agreement" states that the NBC Defendants would accept $1 million for women.com *alone*. *Id.* at ¶ 13. DONE asks this Court to read the word "women.com" to mean "women.com and women.net." Opp. Br. at 6. There is no basis for this reading of the alleged Agreement, which never mentions women.net. Compl., Ex. A.

Recognizing that its position has no support in the Complaint, DONE refers the Court to other documents to shore up its claim.[1] The Court should not consider these documents because there is no ambiguity in the alleged Agreement and thus no

---

[1] The NBC Defendants respectfully request the Court to disregard and/or strike these documents.

Gibson, Dunn & Crutcher LLP

justification for looking beyond its four corners, and because these documents are not part of the Complaint. *See, e.g., Thrifty Payless, Inc. v. Mariners Mile Gateway, LLC*, 111 Cal. Rptr. 3d 173, 181-82 (Cal. Ct. App. 2010) (refusing to accept interpretation of contract that contradicted its plain language); *Hong Kong Supermarket v. Kizer*, 830 F.2d 1078, 1081 n.1 (9th Cir. 1987) (stating it is reversible error to consider documents not incorporated into complaint on Rule 12(b)(6) motion); *Collins v. Palczewski*, 841 F. Supp. 333, 334 (D. Nev. 1993) (declining to review extraneous materials offered by plaintiff in opposing Rule 12(b)(6) motion).[2]

Further, the alleged Agreement states that the NBC Defendants required specified information about DONE and the completion of a bill of sale before a deal could be consummated. Compl., Ex. A. As DONE admits, no bill of sale was ever drafted or signed. *Id.* Thus, at most, there was an unenforceable agreement to agree.

DONE argues in its opposition brief that the bill of sale was just a "formality" and that Sedo said as much in its communications. Opp. Br. at 9. This is simply false.

Sedo's actual statement to DONE was: "NBC/GE will be creating a Bill of Sale for this transaction. We have used this process in the past, and it is nothing out of the ordinary." Compl., Ex. A. This statement means what it says. DONE asks the Court

---

[2] DONE claims that a draft of the brokerage agreement between Sedo and iVillage supports its claims and attaches it to its opposition papers. *See* Opp. Br., Ex. 4. Should the Court take judicial notice of this draft agreement, the document supports the NBC Defendants, not DONE. First, the draft agreement sets the required *minimum* price for a sale of both women.com and women.net at $1.5 million. *Id.* at 1. Thus, it undercuts DONE's claim that the NBC Defendants agreed to sell both domain names for $1 million only. Second, the draft agreement makes crystal clear that the bill of sale requirement was a crucial step in the sale process. It states: "Sedo acknowledges and agrees that prior to confirming the sale of either of the domains above, [iVillage] will conduct its own compliance review of the potential buyer prior to approving the sale." *Id.* at § 4(c)(iii). Third, the draft agreement says that it is governed by New York law, and that New York is the exclusive venue for any claims arising out of the agreement, *id.* at §§ 7.8, 7.9, points that strongly favor transfer. *See infra.*

to ignore the parties' actual words and transform "it is nothing out of the ordinary" to "it is a mere formality." The Court should reject this invitation. Stating that a bill of sale process is normal and usual is *not* stating that it is a formality. Courts recognize that sophisticated business parties must be permitted to contract on their terms, or not at all. *See, e.g., Joseph Martin, Jr., Delicatessen, Inc. v. Schumacher*, 417 N.E.2d 541, 543 (N.Y. 1981) (finding no contract formed).

Finally, none of the cases cited by DONE supports its argument that it has stated a binding contract in the Complaint. To the contrary, these cases make clear that courts will not lightly infer a contract where there is no clear assent by both parties. *See, e.g., Louis Lesser Enter., Ltd. v. Roeder*, 25 Cal. Rptr. 917, 919-22 (Cal. Ct. App. 1962) (finding no contract formed in preliminary letters because parties intended to reduce agreement to more formal writing); *H.S. Crocker Co. v. McFaddin*, 307 P.2d 429, 434-35 (Cal. Ct. App. 1957) (refusing to find contract). DONE's attempt to transform a preliminary agreement into a binding contract fails.

## II. THE COURT SHOULD TRANSFER THIS CASE TO THE SOUTHERN DISTRICT OF NEW YORK

### A. Judicial Economy Clearly Favors Transfer.

DONE admits that the avoidance of duplicative litigation is an important factor in a transfer analysis but argues that the Court need not consider this factor because "there is no duplicative litigation" at this time. Opp. Br. at 16. What DONE ignores is that there will be duplicative litigation if the case is not transferred because the NBC Defendants can pursue their related claims against Sedo only in New York.

The NBC Defendants' brokerage agreement with Sedo mandates that any claims between them be brought "only in the exclusive venue of New York County, New York." Opp. Br., Ex. 4. As DONE concedes, "[f]orum selection clauses are an important factor in making a decision to transfer a case when there is a forum selection clause in the contract the parties are suing over." Opp. Br. at 17. The brokerage agreement is at the heart of this litigation because it determines the scope of

Gibson, Dunn & Crutcher LLP

3

Sedo's authority. This is critical to DONE's claims because it only had contact with Sedo, never with the NBC Defendants directly. Indeed, DONE already has cited the brokerage agreement in support of its claims in *four* different pleadings, including the Complaint, both TRO requests, and its Opposition.

Thus, the case should be transferred so that all claims between DONE, the NBC Defendants, and Sedo can be litigated in a single court. *See, e.g., Storm v. Witt Biomedical Corp.*, No. C-95, 3718 SI, 1996 WL 53624, at *5 (N.D. Cal. January 23, 1996) (holding that "plaintiff's choice of venue does not override [] judicial efficiency" and that party was not entitled to "judicial resources of [two courts] to resolve a dispute arising out of the same facts").

### B.   The Convenience of Witnesses Favors Transfer.

The NBC Defendants cannot join Sedo as a party if this case remains in California. Thus, the Sedo witnesses will be critical third party witnesses based on the East Coast who may be unwilling to participate in a California trial. Moreover, the iVillage executives who may need to testify in this matter are all located in New York and it would be burdensome to have them attend trial in California.[3]

The alleged inconvenience of a New York trial to the two "witnesses" named by DONE does not outweigh the inconvenience to the Sedo and iVillage witnesses of a California trial. Andy Ball is not a fact witness but a purported expert. The convenience of a venue to expert witnesses is almost entirely irrelevant. *See McCrystal v. Barnwell County, S.C.*, 422 F. Supp. 219, 224 (S.D.N.Y. 1976). Further, although Alan Hack is a fact witness, he was not a party to any alleged contract, nor

---

[3]   To the extent the employment status of any iVillage or other NBC Defendant witnesses should change, they will be third party witnesses located in New York. For example, since the NBC Defendants filed their initial Motion, one of their employees who communicated with Sedo, Chris Grosso, has left the company and is now a third-party witness based in New York.

Gibson, Dunn & Crutcher LLP

was he privy to any discussions between Sedo and the NBC Defendants. *See Metz v. U.S. Life Ins. Co.*, 674 F. Supp. 2d 1141, 1147 (C.D. Cal. 2009) (holding that courts "must consider not only the number of witnesses, but also the nature and quality of their testimony" in balancing convenience).

### C. New York Law Will Apply to DONE's Claims.

DONE agrees that the proper venue for this dispute is in the state whose law will apply to its alleged contract claims. Opp. Br. at 13-14. California courts are clear that when an offer is accepted in New York, New York law governs any resulting contract. *See, e.g., Ury v. Jewelers Acceptance Corp.*, 227 Cal. App. 2d 11, 16 (1964) (holding that offer accepted by defendant in New York and communicated via letter to California is a contract made in New York and governed by New York law). Here, because the alleged acceptance by the NBC Defendants occurred in New York, New York will apply to any contract that was formed. Accordingly, this factor also favors transfer.

### CONCLUSION

For all of the foregoing reasons, the NBC Defendants respectfully request that the Court dismiss the Complaint or, alternatively, transfer this case to the Southern District of New York.

Dated: September 28, 2010

GIBSON, DUNN & CRUTCHER LLP
SCOTT A. EDELMAN
JESSICA L. LUND

By: /s/ Scott A. Edelman
Scott A. Edelman

Attorneys for Defendants General Electric Company; NBC Universal, Inc.; and iVillage, Inc.

100945372_1.DOC

# CERTIFICATE OF SERVICE

I, Patricia L. Johnson, hereby certify that upon the electronic filing of the foregoing papers on September 28, 2010, pursuant to this Court's General Order 10-07 a notice of electronic filing for each document will be automatically generated by the CM/ECF system and sent by email to the following attorneys registered with the CM/EFC system:

Patricio T.D. Barrera
Ashley A. Davenport
Stephen G. Svajian
Barrera & Associates
1500 Rosecrans Avenue, Suite 500
Manhattan Beach, CA 90266

Executed on September 28, 2010.

/s:/ Patricia L. Johnson
Patricia L. Johnson

Gibson, Dunn & Crutcher LLP

1