UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES - GENERAL

| Priority | |
|---|---|
| Send | |
| Enter | |
| Closed | |
| JS-5/JS-6 | |
| Scan Only | |

**CASE NO.:** CV 10-04420 SJO (JCx)           **DATE:** January 21, 2011

**TITLE:** Done! Ventures, LLC v. General Electric Co., et al.

========================================================================
**PRESENT:** THE HONORABLE S. JAMES OTERO, UNITED STATES DISTRICT JUDGE

Victor Paul Cruz                                    Not Present
Courtroom Clerk                                     Court Reporter

**COUNSEL PRESENT FOR PLAINTIFF:**                  **COUNSEL PRESENT FOR DEFENDANTS:**

Not Present                                         Not Present

========================================================================
**PROCEEDINGS (in chambers): ORDER DENYING PLAINTIFF'S EX PARTE APPLICATION FOR A TEMPORARY RESTRAINING ORDER AND ORDER TO SHOW CAUSE RE: PRELIMINARY INJUNCTION AND DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S COMPLAINT, AND, ALTERNATIVELY, TO TRANSFER VENUE**
[Docket Nos. 8, 17]

This matter is before the Court on Plaintiff Done! Ventures, LLC's ("Plaintiff") Ex Parte Application for a Temporary Restraining Order ("TRO") and Order to Show Cause Re: Preliminary Injunction ("Ex Parte Application") and Defendants General Electric Company ("GE"), NBC Universal, Inc. ("NBC"), and iVillage, Inc.'s ("iVillage") (collectively, "Defendants") Motion to Dismiss Plaintiff's Complaint, and, Alternatively, to Transfer Venue, filed July 2, 2010 and August 20, 2010, respectively.  The parties filed Oppositions and Replies.[1]  The Court found Defendants' Motion suitable for disposition without oral argument and vacated the hearing set for October 12, 2010.  *See* Fed. R. Civ. P. 78(b).  For the following reasons, Plaintiff's Ex Parte Application and Defendants' Motion are both **DENIED.**

I.      BACKGROUND

On June 3, 2010, Plaintiff filed this action against Defendants in state court, alleging the following causes of action: (1) breach of contract; (2) specific performance; (3) injunctive relief; and (4) declaratory relief.  (*See generally* Compl.)  Defendants NBC and GE removed the action to federal court on June 15, 2010, based on diversity jurisdiction.  (Notice of Removal ¶¶ 3-8.)

---

[1] "Done Ventures, LLC owns several domain names and is in the business of Internet media development, marketing, and publishing."  (Compl. ¶ 8.)

MINUTES FORM 11                                                              __:__
CIVIL GEN                           Page 1 of 13                Initials of Preparer _____

**UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES - GENERAL**

CASE NO.: <u>CV 10-04420 SJO (JCx)</u>                    DATE: <u>January 21, 2011</u>

Plaintiff alleges that it contracted with Defendants, through Sedo.com, LLC ("Sedo"), Defendants' agent, to acquire the domain names Women.com and Women.net for $1,000,000.00.[2] (Pl.'s Opp'n to Defs.' Mot. to Dismiss ("Pl.'s Opp'n") 1, 3; Compl. ¶¶ 9, 10.) Benjamin L. Padnos ("Padnos"), Done Ventures, LLC's, CEO, "verbally offered $1,000,000 for both names and then later confirmed that offer via email." (Compl. ¶ 12; Pl.'s Opp'n 4.) Padnos' email included: "This email confirms my offer of $1M valid until 5 pm on Monday May 24, 2010." (Compl. ¶ 12.)

Plaintiff asserts that Defendants timely accepted Padnos' offer, when, on May 24, 2010, Sedo emailed Plaintiff: "Alan and Ben, Congratulations! The offer for Women.com has been accepted!" (Compl. ¶ 13.) Sedo's reply email (the "Reply Email") also included: "Here are the next steps: NBC/GE will be creating a Bill of Sale for this transaction. We have used this process in the past, and it is nothing out of the ordinary." (Compl. ¶ 14.) On May 27, 2010, Alan Hack and Jeff Gabriel contacted Padnos to inform him that Jeff Zucker, however, had overruled the transaction, thereby terminating the negotiations.[3] (Compl. ¶ 16.)

Now, Plaintiff argues: "Defendants are unwilling to transfer the domain names to Plaintiff. Defendants are in breach of the agreement they formed with Plaintiff on May 24, 2010." (Compl. ¶ 18.) Plaintiff also claims:

> [D]efendants changed the Domain Name System settings for the sites Women.com and Women.net to point to http://www.iVillage.com, thus usurping the web traffic generated by the domain names and causing irreparable damage to [Plaintiff's] ability to compete with iVillage in the future.

(Pl.'s Ex Parte Application ("Pl.'s Application") 2.) To that end, Plaintiff alleges: "Defendants are engaging in despicable business practices by essentially stealing the business they had sold to [Plaintiff]." (Pl.'s Application 2.) Thus, Plaintiff seeks to have this Court "order[ ] Defendants . . . to transfer the domain names Women.com and Women.net to an escrow agent or a neutral third party, and/or enjoin Defendants from transferring, selling, marketing, developing, or encumbering the names in any way." (Pl.'s Application 1.)

Defendants move to dismiss Plaintiff's Complaint, alleging that "no binding contract was formed between any of the parties because there was no meeting of the minds on a material term: the

---

[2] Sedo and Defendants entered into a Professional Brokerage Agreement (the "Brokerage Agreement"), which sets forth the agency relationship between Sedo and Defendants. (Compl. ¶ 10.)

[3] Plaintiff's Complaint does not explain who Jeff Zucker is. (*See generally* Compl.) The Court, however, notes that one of NBC's former CEOs is named Jeff Zucker.

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES - GENERAL**

CASE NO.: <u>CV 10-04420 SJO (JCx)</u>　　　　DATE: <u>January 21, 2011</u>

property for sale." (Defs.' Mot. 2.) Alternatively, Defendants seek to transfer this action to the United States District Court for the Southern District of New York based on the following reasons:

> The gravitational center of this dispute is on the East Coast, where [ ] Defendants and their broker are located, where all discussions between the broker and the [ ] Defendants took place, and where the majority of the witnesses relevant to this litigation reside. The convenience of the parties and the witnesses, as well as the interest of justice, strongly favors the Southern District of New York over the Central District of California.

(Defs.' Mot. 2.) The Court first addresses Plaintiff's Ex Parte Application and then Defendants' Motion to Dismiss.

II.　　<u>DISCUSSION</u>

　　A.　　<u>Plaintiff's Ex Parte Application</u>

"An application for a temporary restraining order involves the invocation of a drastic remedy which a court of equity ordinarily does not grant, unless a very strong showing is made of a necessity and desirability of such action." *Youngstown Sheet & Tube Co. v. Sawyer*, 103 F. Supp. 978, 980 (D.D.C. 1952); *see Dahl v. Swift Distrib., Inc.*, 2010 WL 1458957, *2 (C.D. Cal. Apr. 1, 2010). The standard for granting a TRO "is identical to the standard for issuing a preliminary injunction." *Brown Jordan Int'l. v. Mind's Eye Interiors, Inc.*, 236 F. Supp. 2d 1152, 1154 (D. Hawaii 2002) (citing *Lockheed Missile & Space Co., Inc. v. Hughes Aircraft, Co.*, 887 F. Supp. 1320, 1323 (N.D. Cal. 1995)). Therefore, a plaintiff seeking a TRO must establish the following elements: (1) he is likely to succeed on the merits; (2) he is likely to suffer irreparable harm in the absence of preliminary relief; (3) the balance of equities tips in his favor; and (4) a preliminary injunction is in the public interest. *Sierra Forest Legacy v. Rey*, 577 F.3d 1015, 1021 (9th Cir. 2009) (citing *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7 (2008)).

In *Winter*, the Supreme Court concluded that although "[a]n injunction is a matter of equitable discretion," courts must examine *each* of the four elements. *Id.* "The granting or withholding of a preliminary injunction rests in the sound judicial discretion of the trial court." *Jackson v. Ely State Prison*, 2009 WL 4042688 *3 (D. Nevada Nov. 20, 2009) (internal citations omitted); *see Pratt v. K. Rowland*, 65 F.3d 802 (9th Cir. 1995) (holding that "[a]n abuse of discretion occurs if the district court misapprehends the applicable legal issues or rests its conclusions on clearly erroneous findings of fact.").

**UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES - GENERAL**

CASE NO.:  <u>CV 10-04420 SJO (JCx)</u>            DATE:  <u>January 21, 2011</u>

      1.      <u>Success on the Merits</u>

The central question in this case is whether Defendants breached a contract or agreement with Plaintiff.  (Compl. ¶¶ 19-24.)  However, for several reasons, Plaintiff cannot show that it is likely to succeed on the merits.  First, it is unclear whether the parties intended to refer to both Women.com and Women.net, or to just Women.com.  Plaintiff claims: "the parties referred to Women.com and Women.net as Women.com only, for the sake of convenience and as part of industry jargon." (Pl.'s Opp'n 7.)  Defendants, however, assert: "the alleged Agreement is equally clear that iVillage was willing to accept $1 million for [W]omen.com *only*." (Defs.' Mot. 6.)  To that end, Defendants argue that "iVillage altered a $1 million offer for both domain names and proposed a counteroffer of $1 million for [W]omen.com only." (Defs.' Mot. 7.)  Thus, because it is not clear what the parties meant to include when they referenced Women.com, Plaintiff has not sufficiently established a meeting of the minds.

Second, although Sedo's Reply Email included: "Congratulations!  The offer for Women.com has been accepted!" it also indicated that additional steps would be required of the parties before any agreement could be reached.  "Here are the next steps: NBC/GE will be creating a Bill of Sale for this transaction . . . ." (Compl. ¶ 14.)  Defendants contend: "Sedo expressly told [Plaintiff] that the transaction could not be completed before the parties drafted, negotiated, and signed a [B]ill of [S]ale." (Defs.' Mot. 7.)  In *Bustamante v. Intuit, Inc.*, the court explained:

> We must conclude that the undisputed facts here show no meeting of the minds as to the essential structure and operation of the alleged joint venture, *even if there was agreement on some of the terms*.  The failure to reach a meeting of the minds on all material points prevents the formation of a contract even though the parties have orally agreed upon some of the terms, or have taken some action related to the contract.

*Bustamante v. Intuit, Inc.*, 45 Cal. Rptr. 3d 692, 704 (Cal. Ct. App. 2006) (internal citations omitted) (emphasis added).  Thus, because it is not clear that the Reply Email constituted acceptance of the offer, it is not clear that the parties reached a final agreement.

Accordingly, because it is not clear that there was a meeting of the minds or that the parties even reached a final agreement, the Court cannot conclude at this stage of the litigation that Plaintiff is likely to succeed on its breach of contract claim.  *See Winter*, 555 U.S. 7.

      2.      <u>Irreparable Harm</u>

The Ninth Circuit has recently clarified that a moving party must "establish that he is likely to suffer irreparable harm in the absence of preliminary relief." *Winter*, 555 U.S. 7.  A "TRO is sought upon the theory that there is an urgent need for speedy action to protect the plaintiff's rights." *Lydo*

*Enter., Inc. v. City of Las Vegas*, 745 F.2d 1211, 1213 (9th Cir. 1984) (internal citations omitted). As such, the "correct standard is not whether there is a 'possibility[,]' but rather[,] whether there is a 'likelihood of irreparable harm.'" *Stormans, Inc. v. Selecky*, 571 F.3d 960, 988 (9th Cir. 2009) (citing *L.A. Mem'l Coliseum Comm'n*, 634 F.2d 1197, 1202 (9th Cir.1980)); *see also Lydo Enter., Inc.*, 745 F.2d at 1213 (holding that "[t]he possibility that adequate compensatory or other corrective relief will be available at a later date, in the ordinary course of litigation, weighs heavily against a claim of irreparable harm."). In *Summers v. Earth Island Institute*, the Court held:

> To seek injunctive relief, a plaintiff must show that he is under threat of suffering 'injury in fact' that is concrete and particularized; the threat must be actual and imminent, not conjectural or hypothetical; it must be fairly traceable to the challenged action of the defendant; and it must be likely that a favorable judicial decision will prevent or redress the injury.

*Summers v. Earth Island Inst.*, 129 S. Ct. 1142, 1149, 173 (2009). Moreover:

> [A] plaintiff seeking preliminary injunctive relief must demonstrate that it will be exposed to irreparable harm. . . . Speculative injury does not constitute irreparable injury sufficient to warrant granting a preliminary injunction. A plaintiff must do more than merely allege imminent harm sufficient to establish standing, a plaintiff must demonstrate immediate threatened injury as a prerequisite to preliminary injunctive relief.

*Goldie's Bookstore, Inc. v. Super. Ct.*, 739 F.2d 466, 472 (9th Cir.1984).

Here, Plaintiff asserts that it "intends to compete with NBC's iVillage in creating a content-driven community for women on the web." (Pl.'s Application 1, 8.) Plaintiff "intends to build a business around the domain names Women.com and Women.net," by leveraging the domain names' platforms "to create a compelling website for women, quickly develop a brand, and generate a significant amount of web traffic because of the strength of the domain name." (Pl.'s Application 4, 8.) Plaintiff argues that Defendants' "recent acts do not preserve the status quo and [Defendants] are manipulating the legal system to squash a competitor before the competitor even gets a chance to develop its business." (Pl.'s Application 2.) Specifically, Plaintiff alleges that Defendants recently changed the Domain Name System settings for both Women.com and Women.net by pointing them to http://www.iVillage.com, "thus usurping the web traffic generated by the domain names and causing irreparable damage to [Plaintiff's] ability to compete with iVillage in the future." (Pl.'s Application 2.)

Plaintiff is correct that the threat of irreparable harm "must be immediate . . . as opposed to a mere possibility of harm some time in the future." (Pl.'s Application 10.) Plaintiff cites *Caribbean Marine Servs. Co., Inc. v. Baldrige*, which asserts: "[s]peculative injury does not constitute irreparable

injury sufficient to warrant granting a preliminary injunction." *Caribbean Marine Servs. Co., Inc. v. Baldrige*, 844 F.2d 668, 674 (9th Cir. 1988). However, the harm alleged by Plaintiff is speculative because it is entirely based on Plaintiff's not-yet-developed business that Plaintiff assumes will be enriched by ownership of Women.com and Women.net. The Court cannot determine at this stage, though, whether Plaintiff faces more than the mere possibility of a harm. Indeed, even Plaintiff acknowledges that its argument is wholly premised on future conduct. Accordingly, the Court cannot reasonably conclude at this stage, that Plaintiff faces an irreparable harm.

       3.      <u>Balance of Hardships and the Public Interest</u>

In order to qualify for injunctive relief, a "plaintiff must establish that the balance of equities tips in [his] favor." *Stormans, Inc. v. Selecky*, 571 F.3d 960, 988 (internal citations omitted). "In assessing whether the plaintiff[ ] ha[s] met this burden, the district court has a duty . . . to balance the interests of all parties and weigh the damage to each." *Id.* at 988-89 (internal citations omitted.). Additionally, when deciding to issue an injunction, "courts . . . should pay particular regard for the public consequences in employing the extraordinary remedy of injunction." *Stormans*, 571 F.3d at 988. (internal citation omitted); *see also R.R. Comm'n. v. Pullman Co.*, 312 U.S. 496, 500 (1941).

As Plaintiff has failed to show that it is likely to succeed on the merits of its claim, or that it will likely suffer irreparable harm if a TRO is not issued, the Court declines to balance the hardships potentially suffered by the parties if Defendants are enjoined. Similarly, the Court declines to look at whether an injunction would be in the interest of the general public.

       4.      <u>Conclusion</u>

Because Plaintiff cannot show that it is likely to succeed on the merits of its breach of contract claim or that it will likely suffer irreparable harm if a TRO is not granted, the Court declines to address the remaining elements and **DENIES** Plaintiff's Ex Parte Application for a Restraining Order. *Winter*, 555 U.S. 7.

   B.      <u>Defendants' Motion to Dismiss</u>

       1.      <u>Standard for Motion to Dismiss</u>

On a motion to dismiss, a defendant may move for failure to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). A plaintiff must state "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is facially plausible if the plaintiff has pled facts that "allow . . . the court to draw the reasonable

CASE NO.: CV 10-04420 SJO (JCx)          DATE: January 21, 2011

inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1940 (2009).[4]

The Court must first accept all well-pleaded factual allegations as true, but "[t]hread-bare recitals of the element of a cause of action, supported by mere conclusory statements, do not suffice." *Bell Atlantic*, 550 U.S. at 570. Second, the Court must "determine whether [the well-pleaded factual allegations] plausibly give rise to an entitlement to relief." *Id*. Plaintiff's obligation to provide the grounds of his entitlement to relief, therefore, requires more than labels and conclusions, meaning that a formulaic recitation of a cause of action's elements is insufficient. *Id*. As such, "[f]actual allegations must be enough to raise a right to relief above the speculative level on the assumption that all of the complaint's allegations are true." *Id*.

> 2. Plaintiff's Breach of Contract Claim

Pursuant to California Civil Code § 1550: "It is essential to the existence of a contract that there should be: (1) parties capable of contracting; (2) their consent; (3) a lawful object; and (4) sufficient cause or consideration." Cal. Civ. Code § 1550. "An essential element of any contract is the consent of the parties, or mutual assent." *Donovan v. RRL Corp.*, 109 Cal. Rptr. 2d 807 (Cal. 2001). Therefore, "[m]utual assent usually is manifested by an offer communicated to the offeree and an acceptance communicated to the offeror." *Id*. "An offer is the manifestation of willingness to enter into a bargain, so made as to justify another person in understanding that his assent to that bargain is invited and will conclude it." *City of Moorpark v. Moorpark Unified Sch. Dist.*, 819 P.2d 854 (Cal. 1991). As the *Donovan* court explained:

> The determination of whether a particular communication constitutes an operative offer, rather than an inoperative step in the preliminary negotiation of a contract, depends upon all the surrounding circumstances. The objective manifestation of the party's assent ordinarily controls, and the pertinent inquiry is whether the individual to whom the communication was made had reason to believe that it was intended as an offer.

*Donovan*, 109 Cal. Rptr. 2d 807.

Plaintiff asserts that "Defendants offered the domain names Women.com and Women.net for sale through Sedo's website as Women.com." (Pl.'s Opp'n 6.) Plaintiff pleads that the deal detail page confirmed that the offer was for Women.com and Women.net. (Pl.'s Opp'n 6.) Moreover, Plaintiff argues: "Throughout the course of the transaction the parties referred to Women.com and

---

[4] The Court cites to the Supreme Court Reporter because *Ashcroft v. Iqbal* is not yet published in the U.S. Reports.

**UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES - GENERAL**

CASE NO.:  <u>CV 10-04420 SJO (JCx)</u>           DATE:  <u>January 21, 2011</u>

Women.net as Women.com only, for the sake of convenience and as part of industry jargon." (Pl.'s Opp'n 7.)  Plaintiff further contends that Sedo's Reply Email represented Defendants' acceptance of Plaintiff's offer.  (Pl.'s Opp'n 7.)  Indeed, the Reply Email included the following language: "The offer for Women.com has been accepted!"  (Compl. ¶ 13.)  At this Motion to Dismiss stage, the Court finds that Plaintiff's Complaint has sufficiently alleged Defendants' acceptance of Plaintiff's offer.  Accordingly, Defendants' Motion is **DENIED** to the extent that it seeks to dismiss Plaintiff's breach of contract claim.

    C.    <u>Defendants' Motion to Transfer</u>

        1.    <u>Standard for Motion to Transfer Under 28 U.S.C. § 1404(a)</u>

28 U.S.C. § 1404 ("§ 1404") provides in pertinent part: "for the convenience of parties and witnesses in the interest of justice, a district court may transfer any civil action to any other district court where it might have been brought."  28 U.S.C. § 1404(a).  Section 1404(a) is intended "to prevent the waste of time, energy, and money and to protect litigants, witnesses and the public against unnecessary inconvenience and expense."  *Saleh v. Titan Corp., et al.*, 361 F. Supp. 2d 1152 (S.D. Cal. Mar. 21, 2005) (citing *Van Dusen v. Barrack*, 376 U.S. 612 (1964)).  "Thus, even when venue is proper where the action is pending, § 1404(a) provides the Court with the discretion to transfer an action to a different venue under certain circumstances."  *Catch Curve, Inc. v. Venali, Inc.*, 2006 WL 4568799, *1 (C.D. Cal. Feb. 27, 2006).

Analysis under § 1404 is two-fold.  First, the defendant must establish that the matter "might have been brought" in the district to which transfer is sought.  28 U.S.C. § 1404(a).  "This includes demonstrating that subject matter jurisdiction, personal jurisdiction, and venue would have been proper if the plaintiff had filed the action in the district to which transfer is sought."[5]  *Catch Curve, Inc.*, 2006 WL 4568799 at *1; *see Hoffman v. Blaski*, 363 U.S. 335, 343-44 (1960).  Second, the Court considers the following three factors: (1) the convenience of the parties; (2) the convenience of the witnesses; and (3) the interests of justice.  *See* 28 U.S.C. § 1404(a); *see L.A. Mem'l Coliseum Comm'n v. N.F.L.*, 89 F.R.D. 497 (C.D. Cal. 1981); *see Szegedy v. Keystone Food Prod., Inc.*, 2009 WL 2767683 (C.D. Cal. Aug. 26, 2009).  In analyzing the "interests of justice," the following factors are considered:

> (1) the location where the relevant agreements were negotiated and executed, (2) the state that is most familiar with the governing law, (3) the plaintiff's choice of forum, (4) the respective parties' contacts with the forum, (5) the contacts relating to the plaintiff's cause of

---

[5] This is a diversity case and all Defendants are either New York corporations or have their principal place of business in New York.  Thus, this action could have originally been brought in the Southern District of New York.  (Defs.' Mot. 9.)

> action in the chosen forum, (6) the differences in the costs of litigation in the two forums, (7) the availability of compulsory process to compel attendance of unwilling non-party witnesses, and (8) the ease of access to sources of proof.

*Szegedy*, 2009 WL 2767683 at *2 (C.D. Cal. Aug. 26, 2009); *see Stewart Org. v. Ricoh Corp.*, 487 U.S. 22 (1988). "Other factors that can be considered include: (1) the enforceability of the judgment; (2) the relative court congestion in the two forums; and (3) which forum would better serve judicial economy." *Szegedy*, 2009 WL 2767683 at *2; *see* 17 MOORE'S FEDERAL PRACTICE § 111.13[1] [c] (3d. ed. 1997). Ultimately, the district court must "adjudicate motions for transfer [of venue] according to an individualized, case-by-case consideration of convenience and fairness." *Jones v. GNC Franchising, Inc.*, 211 F.3d 495, 498 (9th Cir. 2000) (quoting *Stewart Org. v. Ricoh Corp.*, 487 U.S. 22, 29 (1988)).

  2. <u>Plaintiff's Choice of Forum</u>

"In seeking to transfer a case to a different district, a defendants bears a heavy burden of proof to justify the necessity of the transfer. The plaintiff's choice of forum should not be easily overturned." *STX, Inc. v. Trik Stik, Inc.*, 708 F. Supp. 1551, 1555-56 (N.D. Cal. 1988); *see Commodity Futures Trading Comm'n v. Savage*, 611 F.2d 270, 278-79 (9th Cir. 1979) (holding that "[t]he defendant must make a strong showing of inconvenience to warrant upsetting the plaintiff's choice of forum."). "If the gain to convenience to one party is offset by the added inconvenience to the other, the courts have denied transfer of the action." *STX, Inc.*, 708 F. Supp. 1556; *see Decker Coal Co. v. Commonwealth Edison Co.*, 805 F.2d 834, 842 (9th Cir. 1986) (holding that "[t]he defendant must make a strong showing of inconvenience to upset the plaintiff's choice of forum"). Thus, Plaintiff's decision to file this action in the County of Los Angeles, in the Central District of California, entitles it to deference.

  3. <u>Convenience of the Parties and the Relative Hardships</u>

"Another factor to be considered in a transfer motion is the residence of the parties." *Dwyer v. Gen. Motors Corp.*, 853 F. Supp. 690, 693 (S.D.N.Y. 1994). In *Dwyer*, the defendant, a Delaware corporation with a principal place of business in Michigan would have to travel regardless of whether the action remained in the Southern District of New York or was transferred to the District of Maryland, as it requested. *Id.* By contract, because the civilian plaintiffs resided in New York, they would be greatly inconvenienced if forced to travel to Maryland to adjudicate the case. *Id.* To that end the *Dwyer* court stated: "A court may also consider the relative means of the parties in deciding a transfer motion." *Id.* The court explained that the defendant:

> possesses considerably greater financial assets. To force plaintiffs to travel to Maryland in order to go forward with their claim would merely increase the financial burdens they already face. Any added

**UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES - GENERAL**

CASE NO.: <u>CV 10-04420 SJO (JCx)</u>   DATE: <u>January 21, 2011</u>

> expenses that [the defendant] might incur as a consequence of defending itself in this District do not justify shifting these expenses to plaintiffs. Accordingly, transfer is not favored here.

*Id.* at 693-94; *see Rare Breed Distilling v. Heaven Hill Distilleries*, 2010 WL 335658, *5 (N.D. Cal. Jan. 22, 2010) (holding that the court may consider the relative means of the parties on a motion to transfer).

Here, Defendants argue that "the only connection to California is that [Plaintiff] – which consists of one employee, Benjamin Padnos – is based in state." (Defs.' Mot. 10.) However, Plaintiff, a small business, possesses fewer resources than Defendants, and so will have greater difficulty in litigating this action in the Southern District of New York, than Defendants will have if this action proceeds in California. Plaintiff asserts that "[its] business depends on Padnos being located in California and requiring him to travel for the purpose of litigation would greatly disrupt his business." (Decl. of Benjamin Padnos ("Padnos Decl.") ¶ 10.) Plaintiff further contends that the depositions Defendants refer to, "can take place anywhere via video conference, and the key witnesses are located outside of New York in Arizona, California, and Massachusetts." (Pl.'s Opp'n 12.) Similarly, although Defendants argue that "[m]ost of the documents relevant to this case are in New York," technology makes it possible that such documents can be easily delivered to California, thereby making the current location of documents a neutral factor. Thus, because transfer of this action to the Southern District of New York would merely shift the inconvenience from one party to another, rather than eliminate it, this factor does not favor transferring the action to the Southern District of New York.

    4.    <u>Convenience of the Witnesses</u>

"The convenience of witnesses is often the most important factor in determining whether a transfer under § 1404 is appropriate." *Allstar Mktg. Group, LLC v. Your Store Online, LLC*, 666 F. Supp. 2d 1109, 1132 (C.D. Cal. 2009); *see Denver & Rio Grande W. Ry. Co. v. Bhd. of R.R. Trainmen*, 387 U.S. 556, 560 (1967) (holding that "venue is primarily a matter of convenience of litigants and witnesses"); *see Decter v. MOG Sales, LLC*, U.S. Dist. LEXIS 90415, 2006 WL 3703368 *2 (E.D. Cal. Dec. 14, 2006) (citing *L.A. Mem'l Coliseum Comm'n,* 89 F.R.D. at 501 (holding that "[t]he convenience of the witnesses is said to be the most important factor in considering a transfer motion").

"The [C]ourt accords less weight to the inconvenience of party witnesses, however, as they can be compelled to testify regardless of the forum in which the lawsuit is ultimately litigated." *Allstar Mktg. Group, LLC v. Your Store Online, LLC*, 666 F. Supp. 2d 1109, 1132-33; *see Applied Elastomerics, Inc.*, 2006 WL 2868971 at *4 (citing *STX, Inc.*, 708 F. Supp. at 1556 (discounting the inconvenience to witnesses who were employees of one of the parties because they could be compelled to testify)); *see Hartfield v. Offshore Oil Servs., Inc.*, 2006 WL 2670984 *6 (S.D. Tex. Sept. 14, 2006) (quoting *Cont'l Airlines, Inc. v. Am. Airlines, Inc.*, 805 F. Supp. 1392, 1397 (S.D.

CASE NO.:   CV 10-04420 SJO (JCx)                    DATE:  January 21, 2011

Tex. 1992) ("The Court reiterates that the convenience of key witnesses who are employees of the defendant requesting transfer is 'entitled to less weight because that party will be able to compel their testimony at trial.'"); *see Worldwide Fin. LLP v. Kopko*, 2004 WL 771219 *3 (S.D. Ind. Mar. 18, 2004) (citations omitted) ("The courts ordinarily assume that the parties will be sufficiently motivated to have their own partners or employees or other allies appear for trial wherever it might take place.  Parties may use Rule 45 of the Federal Rules of Civil Procedure to conduct discovery all over the United States, so the principal concern along these lines is to make non-party witnesses available for trial.  The aim is to minimize the risk of 'trial by deposition.'").

Defendants contend that aside from Padnos, "[e]very other relevant witness and piece of evidence is on the East Coast."  (Defs.' Mot. 10.)  Defendants state that iVillage executives and NBC witnesses are all based in New York:

> These executives will be critical witnesses, as they will testify to the
> understanding between NBC and Sedo. . . . It would be burdensome
> for these New York-based executives to travel cross-country to testify
> at trial.  Further, all NBC witnesses would have to be deposed in
> New York.

(Defs.' Mot. 10.)  Plaintiff, on the other hand, identifies two witnesses, Andy Ball and Alan Hack, and asserts: "Both witnesses live in Arizona.  It would be much more convenient for those witnesses to travel to Los Angeles, than New York."  (Pl.'s Opp'n 12.)

As previously mentioned, depositions can take place anywhere via video conference and party witnesses can be compelled to testify.  Moreover, it is significantly more disruptive for Plaintiff to have its CEO, Padnos, travel, than it is to have certain of Defendants' several executives travel.  Thus, the convenience of witnesses factor favors proceeding with this action in the Central District of California.

> 5.      Governing Law

Plaintiff asserts that  California law applies because the contract at issue here "was made in California."  (Pl.'s Opp'n 13.)  "In California a contract is governed by the law and usage of the place where it is to be performed, or, if place of performance is not indicated, by the law and usage of the place where it is made."  *Henderson v. Super. Ct.*, 142 Cal. Rptr. 478 (Cal. Ct. App. 1978).  Plaintiff, therefore, argues that "California is the forum with the most familiarity with the governing law and the most interest in seeing that law applied correctly."  (Pl.'s Opp'n 14.)  To that end, Plaintiff asserts that a diversity case like this should be litigated "in a forum that is at home with the state law that must govern the case."  *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 509 (1947). Defendants, on the other hand, contend: "Because New York substantive law applies to [Plaintiff's] breach of contract claim, New York is the forum with the most familiarity with the governing law and the most interest in seeing that law applied correctly."  (Defs.' Mot. 14.)

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES - GENERAL**

CASE NO.: CV 10-04420 SJO (JCx)                              DATE: January 21, 2011

However, even if the Court assumes (and it does not) that New York law applies, "[t]he fact that the law of another jurisdiction governs the outcome of the case is a factor accorded little weight on a motion to transfer . . . especially in an instance such as this where no complex questions of foreign law are involved." *Vassallo v. Niedermeyer*, 495 F. Supp. 757 (S.D.N.Y.1980); *see also Nat'l Patent Dev. Corp. v. Am. Hosp. Supply*, 616 F. Supp. 114, 119 (S.D.N.Y.1984); *see Holmes v. Freightliner, LLC*, 237 F. Supp. 2d 690, 696 (M.D. La. 2002) (holding that "[w]here no complex questions of foreign law are presented, courts consider this factor to be of less importance."). Indeed, this is a relatively simple case involving contract law. Therefore, whether the substantive law of California or New York applies here is of little consequence, and therefore, is a factor that neither favors nor disfavors transfer of the action.

      6.      The Interests of Justice

"One of the primary functions of § 1404(a) is to avoid the wasting of judicial resources and unnecessary expenses." *Van Dusen v. Barrack*, 376 U.S. 612, 616 (1964). "The interest[s] of justice include such concerns as ensuring speedy trials, trying related litigation together and having a judge who is familiar with the applicable law try the case." *Allstar Mktg.*, 666 F. Supp. 2d at 1134.

Plaintiff asserts that judicial economy favors proceeding in the Central District of California because "the Southern District of New York is busier." (Pl.'s Opp'n 15-16.) On the other hand, Defendants argue that "if the Court does not transfer this action, NBC would have to bring a duplicative lawsuit in New York to resolve any claims against Sedo." (Defs.' Mot. 11.) Defendants cite a Professional Brokerage Agreement between Sedo and iVillage that contains a forum selection clause requiring that any claim arising out of it be filed "only in the exclusive venue of New York County, New York." (Defs.' Mot. 11.) "Consolidation with a case pending in another district is a relevant factor under § 1404(a)." *U.S. v. Casey*, 420 F. Supp. 273, 277 (D.C. Ga. 1976). Indeed, "[a]mong the numerous factors that a court considers in § 1404(a) transfers is the ability of a defendant to join third parties in the transferee district. It is an important although not conclusive conclusion in favor of the party seeking transfer that third parties cannot be joined in the pending action in the transferring forum." *Id*.

Although judicial economy disfavors duplicative litigation, Sedo is not a named party in this action, Defendants have not filed an action against Sedo in New York, and it is not clear that Defendants would not be able to establish personal jurisdiction over Sedo in the Central District of California. (Defs.' Reply 3.) Thus, it is premature for the Court to transfer this action to the Southern District of New York based on the mere possibility that Defendants may file an action against Sedo in New York and that Defendants cannot establish personal jurisdiction over Sedo in the Central District of California. "While third-party joinder is an important consideration, it does not overcome [the] strong interest in litigating near [plaintiff's] residence." *Vassallo v. Niedermeyer*, 495 F. Supp. 757, 761 (D.C.N.Y. 1980). As such, this factor favors proceeding in the Central District of California.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES - GENERAL

| | |
|---|---|
| CASE NO.: <u>CV 10-04420 SJO (JCx)</u> | DATE: <u>January 21, 2011</u> |

   7.  <u>Conclusion</u>

The totality of factors favor proceeding with this action in the Central District of California. *See* 28 U.S.C. § 1404(a). Plaintiff's choice of venue is entitled to deference and Plaintiff faces greater hardships if the action is transferred to the Southern District of New York, than Defendants face if the action proceeds in the Central District of California. Finally, the interests of justice favor proceeding in the Central District of California. Accordingly, Defendants' Motion is **DENIED** to the extent that it seeks to transfer this action to the Southern District of New York.

III.  <u>RULING</u>

For the foregoing reasons, Defendants' Motion to Dismiss Plaintiff's Complaint, and, Alternatively, to Transfer Venue is **DENIED**. Defendants have until **FEBRUARY 22, 2011** to file an Answer. Plaintiff's Ex Parte Application for a Restraining Order is also **DENIED**. The Court reminds the parties of the **MARCH 7, 2011** Scheduling Conference.

IT IS SO ORDERED.